## Morrow v. Monarch Motor Sales Co. et al.

Argued April 10, 1933.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Wayne A. Gleeten* of *Hosbach and Gleeten,* for appellant.—An injury which results from an act which is contrary to positive orders of the employer is not compensable: Shoffler v. Lehigh Valley Coal Company, 290 Pa. 480; Dicky v. Pittsburgh & L. E. R. R. Co., 297 Pa. 172.

*J. B. Held,* and with him *Harold F. Mook,* for appellee, cited: Smith v. Walsh Bros. et al., 102 Pa. Superior Ct. 54; Prezel v. Spencer, 99 Pa. Superior Ct. 404.

OPINION BY STADTFELD, J., July 14, 1933:

This is a workmen's compensation case wherein the referee disallowed compensation. Upon appeal the Workmen's Compensation Board made an award in favor of claimant. The court below dismissed exceptions to the award, affirmed the findings of fact and

conclusions of law of the board, and directed the entry of judgment on the award. From that judgment this appeal is taken by defendant.

The board set aside the referee's finding of fact, conclusion of law and disallowance, and substituted therefor the following: "First: That Lloyd Morrow died on July 17, 1931, as the result of injuries received in an automobile accident, which occurred near McKean, Erie County, Pa., on Sunday, July 12, 1931, between 10:00 and 11:00 P. M.; that decedent was employed by the Monarch Motor Sales Company of Erie, Pa., as a retail salesman on the new car floor, but had sold at least one used car, according to the testimony of defendant's sales manager. This witness further testified that decedent worked evenings during the week, but not on Sunday nights, altho claimant's testimony was directly to the contrary: That about 6:00 P. M. on the evening of the accident, Max Case, a salesman for the Monarch Motor Sales Company in the used car department, sought from the sales manager the loan of a Chevrolet coach for the purpose of taking his father, mother and wife on a pleasure ride, promising to have the car back at 9:00 P. M. That about 7:00 P. M. the witness saw Case and Morrow driving in the Chevrolet, which later figured in the accident, resulting in the decedent's death. That in the car with the two salesmen at the time of the accident was one Gerald Dunn, who testified as a prospective buyer for a 1929 Chevrolet coach, that he had met defendant's salesman, Morrow, on June 15th, and had seen and talked with him again before the night of the accident about buying such car. That on the night of the accident defendant's salesman, Morrow, called at his home about 8:00 P. M., and invited him and his wife to go for a ride in the Chevrolet coach belonging to defendant, as he afterwards learned. That the deceased asked this witness as they first entered the car

for their drive how he liked this car and similar questions later on before the accident. That while his testimony before the referee was in some minor respects at variance with the statement made the forenoon following the accident at the hospital to the insurance representative, it appeared that the written statement offered in evidence by defendant was neither written out, nor signed nor read by the witness Dunn, before he attached his mark thereto, but was a summary made by the insurance representative in his own language of the statements purporting to have been made to him by Dunn while the latter was suffering awful pain and misery from the accident. Obtained under such circumstances, the witness's statement had no real probative value. While the testimony further disclosed that it was not the practice for salesmen to take out cars for demonstration without permission, yet it did not appear that such was never done, nor ever forbidden. It further appeared from the testimony, that the car involved in the accident bore defendant's license plates, thus overcoming the presumption that it was being used by defendant's salesmen solely for pleasure, instead of demonstration purposes as claimant's evidence shows. We accordingly find as a fact that claimant, by the fair, credible, competent and disinterested testimony offered, has fully met the burden of proof that decedent was actually in the course of his employment at the time of the fatal accident."

This court is not a fact finding body, and if there be any legally competent evidence, or a pure inference of fact fairly deducible therefrom, the award must be sustained, although we might differ from the conclusion thus reached: Ford v. Dick Co., 288 Pa. 140. We cannot substitute our judgment for that of the referee or the board, as the compensation act has delegated to them the exclusive function of determining these facts. An

appellate court will not review such conclusion: Morris v. Yough Coal and Supply Co., 266 Pa. 216; Todd et ux. v. Lehigh Valley Coal Co., 297 Pa. 302; Smith v. Welsh Bros. et al., 102 Pa. Superior Ct. 54; Breslin v. Susq. Col. Co., 107 Pa. Superior Ct. 449, 163 A. 913.

A careful examination of the evidence leads us to the conclusion that there was sufficient legally competent evidence to sustain an award in favor of claimant.

A more serious question, however, arises in relation to the amount of the award as to whether there is any legally competent evidence to sustain same.

According to the testimony of claimant, decedent brought home to her $25 a week, which she assumed was his salary. She did not know that her husband was working on a commission basis.

L. H. Rote, sales manager for Monarch Motor Sales Company, testified that "Mr. Morrow worked on a straight commission basis of 7%. He came there the first time and he was there three weeks and we advanced him $25 against 7% commission, an advance, that is not a salary. He came there on March 15th, this year, and he left the 8th or 9th of April. When he left he was $65 in the red, that was against him on the books. . . . . . . Then on the 7th day of July, 1931, that is this year, he came back to me and wanted to go to work again. He said he would work and try to get even with the board and work that out, and at the time of the accident he was $57 or $58 overdrawn." There was not, according to the testimony, any arrangement or agreement to pay him stipulated wages. Taking into consideration his drawing account per week, and the amounts overdrawn at the several periods of his employment and at the time of the accident, the testimony does not indicate earnings of $25 per week, and therefore does not sustain the award, or the judgment entered thereon. There should be no

difficulty in establishing from the books of the company, the exact earnings of decedent on which to base a proper award.

The assignments of error in relation to the amount of the award, and the judgment entered thereon, are sustained, the judgment is reversed, and the court is directed to refer the case back to the board for the taking of additional testimony to properly determine the wages or earnings of claimant's deceased husband for the purpose of basing a proper award thereon. The other assignments of error are overruled.