Marinho *v.* Glen Alden Coal Company, Appellant.

280

Argued March 6, 1934.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*J. H. Oliver*, and with him *Franklin B. Gelder*, for appellant.

*E. C. Marianelli*, and with him *Harry Unger, for* appellees.

Opinion by James, J., December 17, 1934:

This compensation case was previously heard by us and by an opinion of Judge Stadtfeld reported in 108 Pa. Superior Ct. 560, the court of common pleas was reversed and the record was remitted so that the court should pass upon specific exceptions filed by the defendant to the findings of fact, conclusions of law and award made by the Workmen's Compensation Board to the claimant. The court below thereupon sustained the fifth and eighth conclusions of law, which in view

of the findings of fact are not pertinent, and dismissed the exceptions to the findings of fact and affirmed the award of the compensation board.

On January 5, 1929, claimant's decedent, Marinho, was a laborer for Bass Borgas, his miner, who was Marinho's direct superior; both were employed at the Storrs Colliery of the Glen Alden Coal Company. On the morning of January 5, 1929, Marinho was killed by a fall of rock and the claimant now seeks compensation for his death.

On the day of the accident, Borgas and his two laborers, one of whom was Marinho, entered the mine. The fireboss, Watkins, in the presence of the decedent notified the miner that the roof in the gangway was in no condition to safely work under, and that the bad roof was to be taken down before he would go into the face or work under it. Borgas was the miner of the gangway and the airway. He proceeded to the airway and then returned to examine the gangway, meanwhile, deceased remaining some distance from the working face of the gangway. Upon his inspection, Borgas found two loaded cars in the face over which he found the roof to be in very bad condition, which condition extended to a point about fifty feet from the face. He showed this condition to Marinho, warning him not to go into the dangerous section and directed him to bring up certain tools from a point several hundred feet distant on the gangway, and deposit them at a point, which is the question largely in dispute. Borgas then went to the airway and upon his return found Marinho underneath a fall of the roof, and near his body some of the tools that he had been ordered to bring up. The board in its seventh finding of fact found as follows: "Having thus received his instructions the said ...... Marinho then proceeded to bring the said tools and equipment to the approximate point indicated by his miner and while depositing the said

tools and equipment at the place indicated by his miner and within a radius of approximately nine feet therefrom, the decedent inadvertently approached a point underneath the outer end of the said defective roof, the exact ends of the defective roof not being clearly discernible, and was then and there instantly killed by the fall thereof."

Appellant contends that under the facts as established, deceased violated Art. XII, rules 25 and 34 of the Anthracite Mining Laws, Act of June 2, 1891, P. L. 176; 52 PS §296 and §400, which provide inter alia: "That no person shall enter a place in or about the mines against caution," and that "the laborer or assistant shall not go to the face of such breast or place until the miner has examined the same and found it to be safe."

The burden to establish these contentions was upon the employer and although not held to the strict measure of proof required in a criminal case, the evidence to refute the claim should at least approximate that required in a criminal case.

The testimony of Borgas is somewhat confusing and contradictory, but it was the duty of the fact finding board to reconcile the conflicting statements and if there was testimony in the record from which the facts could be found, we are bound thereby. Borgas' testimony is in part as follows: "Q. You told him to move the tools to the place you were standing and that place was fifty feet from the face? A. Yes sir. ...... Q. How far from the face did you find Marinho? A. Pretty close to fifty feet. Q. From the face? A. Yes. ...... Q. He went beyond where you told him did he? A. He was just at the place I told him to stop right here with the tools. ...... Q. You found him right where you told him to bring the tools, did you? A. Yes." Upon recross-examination he testified as follows: "Q. He was outside the bad roof when you

went in the other chamber? A. Yes. Q. You came back and he was under the rock wasn't he? A. Yes. Q. Where you told him not to go. Is that right? A. Yes sir."

Defendant's witnesses gave testimony to the effect that the body was found nine feet beyond where Borgas told the decedent to bring the tools, but it is to be noted that the testimony was based largely on their understanding of the narrative told by Borgas after the accident. However, the findings of the board rather favored the defendant's testimony in that it found: "...... While depositing the said tools and equipment at the place indicated by his miner and within a radius approximately nine feet therefrom, the decedent inadvertently approached a point underneath the outer end of said defective roof, the exact ends of the defective roof not being clearly discernible, and was then and there instantly killed." Assuming, however, that Borgas had in fact indicated as the place for the tools, a spot nine feet back of the place where Marinho's body was found, there is a difficulty to conceive that either of these men was aware of the exact point to which the defective roof extended. Borgas testified that he saw a crack in the roof at the face and that the roof above the two cars was bad, but there is nothing to indicate that the full extent of the defective roof was visible. Certainly, nothing in the record indicated that Marinho knew the extent of the defective roof as the examination had been made by Borgas and we cannot infer that he was deliberately willing to risk his life to a spot of known danger. As the opinion of the court aptly points out that: "The course of events have made facts very definite to survivors which were indefinite to the deceased. The extent of the bad roof was probably indefinite to all concerned before the roof fell. It is doubtful whether or not the miner indicated the exact

spot to which the tools were to be brought. If he did so, it is doubtful whether deceased understood or remained within ten feet of said spot."

Under these circumstances we cannot reverse a finding by the board that, "the decedent inadvertently approached a point underneath the outer end of said defective roof, the exact ends of the roof not being clearly discernible ......" The objection is raised that the word "inadvertently" is an unwarranted inference. We cannot say as a matter of law that there was no evidence from which such an inference is fairly deducible. "If the finding is based on any competent evidence or an inference fairly deducible therefrom, the award must be sustained, though we might differ from the conclusions thus reached. We cannot substitute our judgment for that of the referee or the board, as the compensation act has delegated to them the exclusive function of determining these facts. An appellate court will not review such conclusion." Gerst v. Smith Faris Co., 107 Pa. Superior Ct. 30, 162 A. 490; Stahl v. Watson Coal Co., 268 Pa. 452, 112 A. 14.

Section 25 of Art. XII reads as follows: "Any person who shall knowingly or wilfully or without proper authority ...... enter a place in or about the mine against caution shall be guilty of an offense against this act." Without deciding that the point at which decedent met his death was a place in or about the mine within the meaning of the act, under the findings of the board that deceased entered into the danger zone by inadvertence, deceased clearly did not knowingly or wilfully or without authority enter the place against caution. The labor in which decedent was engaged at the time of his death was within the specific instructions of his miner, to wit: "bringing up the tools" and, therefore, he is not in the same category as that of a stranger or trespasser and must be considered in determining whether he had wilfully and

knowingly violated the mine rule. Unless the act is done wilfully or knowingly or without proper authority, the mine rule is not violated and the determination of the intent is clearly within the province of the fact finding board, and their finding of fact is conclusive upon us.

Nor do we agree that the decedent was acting without authority, which is the substance of the objection to the fifth finding that "at or about 6 A. M. of January 5, 1929, Bass Borgas and his two laborers reported for work at the Storrs Colliery of the Glen Alden Coal Co. and were then and there duly notified by the said James Watkins, fireboss, that the roof of Shaft No. 3 was in an unsafe condition and instructed the said Bass Borgas *and his two laborers* that the first thing they were to do that morning was to take down the defective roof." Since Marinho was not attempting to remove the defective roof, but merely bringing up the tools for the purpose, it seems immaterial whether the instructions to remove the roof were given to Borgas and Marinho, or to Borgas alone. Conceding for the moment that only the miner had authority to drill the hole in the roof and remove it, an almost impossible task for one man without assistance, there is no reason why a laborer should not bring up the tools in preparation for the work. Indeed, this would be one of his duties. Decedent's presence was required in the gangway for the purpose of removing a dangerous hazard. Obviously, Section 25 of Art. XII, supra, could not have been intended to prevent men who have been cautioned as to dangers from removing such dangers, else all mine work would be at a standstill. This necessity is recognized by Art. XII, rule 12 of the Act of 1891, where it is said: "...... No person shall be permitted to work in an unsafe place *unless it be for the purpose of making it secure* ......" The decisive factor, however, is the fact that the finding

of the board was made upon competent evidence. The witness, Watkins, in an answer to a question by counsel as to whom he had notified that the roof was in an unsafe condition said: "Q. You notified whom? A. The miner and both his laborers that it was in no condition to safely work under, and told the miner to take down this bad roof the first thing before he would go into the face or before he would work under it in the face, and I had his word for it that he would do so after he passed me in the morning." As was said in Roselli v. Franklin Tanning Co., 109 Pa. Superior Ct. 113, 165 A. 762: "If findings in compensation cases are based on competent evidence or inference fairly deducible therefrom, the award must be sustained." Morrow v. Monarch Motor Sales Co., 109 Pa. Superior Ct. 162, 167 A. 401. In view of the foregoing discussion we conclude that there was no error in the finding of the board that decedent had not acted in violation of Section 25, Art. XII of the Act of 1891, P. L. 176.

Appellant further contends that under the facts decedent was at the time of his death violating Art. XII, rule 34 of the Act of 1891, supra, which provides: "Before commencing work and also after the firing of every blast, the miner working a breast or any other place in a mine, shall enter such breast or place to examine or ascertain its condition, and his laborer or assistant shall not go to the face of such breast or place until the miner has examined the same and found it to be safe." Our discussion of the application of Rule 25 to the facts largely answers the question whether there was a violation of Rule 34.

Assuming the fact that the spot to which the decedent had been directed by his miner to place the tools was "the face of such breast or place," in view of the fact that the miner had examined the gangway and found it to be unsafe, and deceased was acting under

the orders of his miner preparatory to rendering the place safe, we cannot hold that deceased was violating this mine rule.

We cannot adopt appellant's contention that the final answer of the miner is binding upon the claimant, citing as authority, Black v. Philadelphia Rapid Transit Co., 239 Pa. 463, wherein it was held that where plaintiff's statements of the occurrence were contradictory and his attention was called to the contradictions in his testimony, his final statement of the fact is that which his case must be judged by. In the instant case the miner's contradictory statements were not called to his attention and if they were, it was still for the board to determine whether under all the testimony, defendant had met its burden of proof.

The assignments of error are overruled and the judgment is affirmed.