Parkins *v.* Hillman C. and C. Co., Appellant.

Argued April 12, 1934.

Be-

fore TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*R. M. Steffler,* and with him *Uhl & Ealy,* for appellant.

*Alvin Sherbine,* for appellee.

OPINION BY JAMES, J., October 3, 1934:

This is an appeal by the employer from the judgment of the court of common pleas affirming the compensation board which had affirmed an award of compensation by the referee.

From the evidence it appears that claimant's decedent, Delbert Parkins, died on August 5, 1932 as a result of injuries sustained in a mine explosion which occurred in the defendant's Jerome mine on the night of July 28, 1932. On the night of the explosion the decedent, who had been qualified for a first-grade mine foreman's certificate, was employed as an assistant mine foreman and fire boss in charge of sections 102 and 103 west entries, in which crews 015 and 015½ worked. The explosion occurred in a cross-cut which had been driven off heading No. 5 in the direction of heading No. 4 and this particular section of the mine was gaseous and the mine was recognized as a gaseous mine. From the main haulage road a canvas had

been placed along No. 5 heading to a point within twelve feet of the face of the cross-cut and the air passed up No. 5 heading around the furthest point of the canvas back to No. 4 heading for the purpose of ventilating the working face. That gas had accumulated in No. 5 heading was known to the mine foreman who, on July 26th, had issued instructions to the assistant mine foreman to brattice the heading by putting up canvas to cause circulation of air in the working place and particularly at the face of the coal.

Joe Granolarsky, Frank Lawrence, and Larry Cirillo, were the three persons constituting 015 conveyor crew in No. 5 cross-cut of No. 5 heading on the night of July 28, 1932, when the explosion occurred. Granolarsky and Cirillo went into the working place shortly after five o'clock in the afternoon, the former carrying with him an approved safety lamp. When they entered the cross-cut they tested the place with a safety lamp and discovered the presence of gas whereupon Granolarsky and Cirillo left the cross-cut and Granolarsky went over to 023 conveyor crew's working place and left word that if they saw the boss (Parkins, the assistant mine foreman and fire boss) to send him over to his working place. Upon his return to the face, he found Cirillo and Lawrence in the working place, the latter engaged in brushing gas with a shovel, and after doing so no gas could be detected at the face of the coal. The crew then cut the coal with a machine and they were putting the machine away from the face of the coal when Parkins came in carrying a safety lamp. Parkins tested with his safety lamp and found gas. The men again brushed the gas with shovels, in the presence of Parkins, and then resumed work by boring three holes into the coal, loaded and tamped the holes and fired them. After the firing, Parkins went into the place again, and returning to the men, who had withdrawn from the room during

the firing, said to them, according to the testimony of Granolarsky, "Boys, I think you take a couple of minutes off, full of smoke up there and gas too." He said "The gas won't hurt you now because the coal is shot down and no fire to explode gas." After making this alleged statement, Parkins left the place. The crew stayed out of the working place about one-half hour and then Lawrence and Cirillo returned and started to load coal; Granolarsky refused to go back into the room because he was afraid of gas. This was between six and seven o'clock in the evening. Parkins did not return to the place until around eleven o'clock in the night, when he found Lawrence and Cirillo in the place engaged in drilling holes near the bottom in the face to discover how much further they had to go to reach heading No. 4 and reach the cross-cut. Parkins sat down on the cutter bar of a mining machine, twelve or more feet from the face of the coal, placing his safety lamp beside him. Another miner, Herbert Geist, came into the room and sat down opposite him. A few minutes later, when Lawrence threw the drilling machine on the floor, an explosion occurred killing Lawrence and Cirillo outright, and injuring Geist and Parkins, from which injury the latter died on August 5, 1932. The cause of the explosion was unknown.

The referee found in his twelfth finding of fact that "the decedent was not violating the Bituminous Mining Laws of Pennsylvania or any other statute at the time he sustained his injury and that he sustained his injury while in the employ of the defendant, and on the operating premises of the defendant at a place where his employment required he be at that particular time."

Defendant claimed that Parkins took himself out of the course of his employment when he failed to perform the duties required of him by the Bituminous

Mine Law, Act of June 9, 1911, P. L. 756, particularly the following sections: Section 11, Article IV; Section 24, Article IV; Sections 1, 4 and 5 of Article V; Rule Nineteen of General Rules, Article XXV, and Section 2, Article XXVI.

Under this appeal our revisory powers are limited to a determination of the question whether there is evidence to support the findings and whether the law has been properly applied. Where the findings are supported by competent proof, they and the inferences to be drawn therefrom are as conclusive as the verdict of a jury: Johnston v. Payne-Yost Construction Co., 292 Pa. 509, 141 A. 481, and other cases therein referred to. The duty of the referee and the board was to determine whether under all the evidence the claimant met his death "in the commission of an act in direct violation of the law": Gima v. Hudson Coal Co., 106 Pa. Superior Ct. 288, 161 A. 903; Shoffler v. Lehigh Valley Coal Co., 290 Pa. 480, 139 A. 192. The burden to establish that the injury was caused by the violation of the law is upon the employer and as was said in Labuck v. Mill Creek Coal Co., 292 Pa. 284, 287, 141 A. 35, "While it is not our intention to hold the defendant to the strict measure of proof demanded in a criminal case, the evidence to refute the claim should at least approximate that required in criminal cases."

Section 11, Article IV relates to the mine foreman and his duties and by Section 24, Article IV, it is provided that in the absence of the mine foreman the assistant shall perform the duties of the mine foreman. The portion of Section 11 pertinent to the present case is as follows: "The mine foreman shall see that every mine generating explosive gas is kept free of standing gas in all working places and roadways. ...... No person who may be endangered by the presence of said explosive gas or noxious gases shall be allowed in that portion of the mine until said gases have been removed."

This rule clearly applies to standing gas, evidently meaning an accumulation of gas, and was not intended to apply to a portion of a mine in which gases were simply generating. The fact that gases had been discovered on previous days, and that the cross-cut contained an accumulation of gas on the night of the accident, indicated beyond question that the cross-cut was generating gases, but if no person was allowed in a section of a coal mine because gases were being generated, the result would be that no coal could be mined in any mine generating explosive gas. It was the duty of decedent to see that the cross-cut was properly ventilated to prevent the accumulation of standing gas. The evidence established that early in the evening there was standing gas and that decedent permitted the violation of the Bituminous Mine Act (Article XXV, Rule Nineteen) in allowing the workmen to use shovels to brush the gas from the cross-cut, but this violation had no relation whatever to the fatal explosion. Subsequently, when three holes had been bored and fired, decedent made an examination, reported gas and smoke, and advised the workmen to "take a couple of minutes off." They remained out for half an hour. Lawrence and Cirillo returned and started to load coal. From this time until Parkins returned about 11:00 P. M., these men were engaged in the cross-cut and no testimony was offered showing the condition during that time. At the time when Parkins returned to the cross-cut, the record is barren of any testimony to indicate that there was any accumulation or standing gas, as a result of which the explosion happened but, according to the testimony of Geist, the only survivor of the explosion, the safety lamp of the decedent did not show evidence of gas in the cross-cut although, according to his testimony, there may have been gas at the face of the coal. The cause of the explosion remains unknown, whether

from standing gas or by the release of a quantity of gas from the holes that were being drilled.

In passing upon the testimony the fact-finding authorities were not required to believe the inferences from the testimony of Granolarsky that Lawrence and Cirillo had been allowed to work in standing gas from seven o'clock until eleven o'clock and that standing gas had accumulated at the time of the explosion. The referee and the board could take into consideration that the conduct of the conveyor crew who were drilling the holes and Geist and the decedent did not indicate that there was a body of standing gas or if there was that they were aware of its presence at the time of the explosion. The very presence of the decedent at the cross-cut indicated he was zealous in the performance of his duties and to find him guilty of a violation of law and a serious neglect of duty is inconsistent with the interest he was displaying in the work that was being performed.

An examination of Rules 1, 4 and 5 of Section V of the Bituminous Mine Act shows that they relate to certain duties of the fire boss, which have no application to the facts in the present case; Rule Nineteen of the General Rules, Article XXV, relates to the brushing of gas which we have heretofore referred to as having no relation to the explosion, and Rule XXVI, Section 2, provides penalties for violations of the act.

Considering all of the testimony, the referee and the board were fully warranted in finding that decedent was not violating the law at the time he sustained the injury.

Judgment affirmed.