Opinion by
 

 Rhodes, J.,
 

 Claimant filed a petition claiming compensation for
 
 *478
 
 the death of her husband who was employed by defendant as a miner. The petition was referred to Referee Lewis, and the first hearing was held before him on December 20,1932. At that hearing, the record discloses, it was agreed between the parties that deceased! was employed by defendant at its West End Colliery, at Mocanaqua, Pa.; that on June 30, 1932, he was fatally injured while working for defendant as a miner; that he died as the result of said injuries on July 2, 1932; that defendant had immediate notice of the accident; and that the only question for determination was whether deceased was in the course of his employment at the time of the admitted accident on June 30, 1932. This question has become obscured in a maze of procedural confusion. It was the position of defendant that compensation should not be allowed, as it was the commission of an act in direct violation of law by deceased that resulted in his fatal injuries. After hearings before Referee Lewis on December 20, 1932, July 14, 1933, and November 17, 1933, he entered an order of disallowance, having concluded “that Frank Serafini was injured when he discharged a charge of dynamite in violation of Rule 29 of the Anthracite Mining Laws of Pennsylvania.” The referee made, inter alia, the following findings of fact:
 

 “3. About 4:00 P. M. June 30, 1932 Frank Serafini was seriously injured by an explosion of dynamite in the chamber Avhere he was employed, during his regular tour of duty. As a result of these injuries Mr. Serafini died on the 2d day of July 1932.......
 

 “7. The West End Coal Company sets up as a defense that Frank Serafini was injured while violating rule 29 of the Anthracite Mining Laws of Pennsylvania. The powder rules posted in and about the mines of the West End Coal Company prescribe the use of blasting machine or firing battery in exploding charges. Three weeks prior to the accident Mr. Serafini had been told
 
 *479
 
 by the foreman to nse a battery in exploding Ms charges and had also been told where he could get the battery. At the time the accident happened no battery was being used to explode the charges but instead the exploding was being done by means of a long wire, one end of which they would attach to the exploder after it had been grounded to the rail and then touch the other end to the electrically charged trolley wire.
 

 “8. Frank Serafini was injured while attempting to explode a charge of dynamite by some means other than by a battery, as prescribed in the powder rules.”
 

 Rule 29, of article 12, of the Anthracite Mine Law of June 2, 1891, P. L. 176 (52 PS §424), is printed in the margin.
 
 [1]
 

 Upon appeal the Workmen’s Compensation Board affirmed the action of the referee, and claimant appealed to the court of common pleas. That court was of the opinion that the conclusions of the referee and board were warranted by the testimony. However, because no copy of the “powder rules,” referred to by the referee, appeared in the record, and in the absence of a specific finding that they had been furnished by the manufacturer and approved by the owner, operator, or superintendent of the mine, as required by rule 29, article 12, of the Anthracite Mine Law (52 PS §424), the court below was! of the opinion that the record lacked the basic findings upon which such conclusions were founded, and, accordingly, remitted the record to the board for more specific findings. The burden was on defendant to prove that deceased received his in
 
 *480
 
 juries in the commission of an act in direct violation of the law as alleged.
 
 Gima v. Hudson Coal Co.,
 
 106 Pa. Superior Ct. 288, 161 A. 903;
 
 Haywood v. Henrietta Coal Co. et al.,
 
 118 Pa. Superior Ct. 371, 180 A. 34. This burden was not met, and we find no evidence at this stage of the proceedings to support the contention of defendant and the action of the compensation authorities. On the appeal to the court of common pleas by claimant, that court should have reversed the board and remitted the record with direction that an award be made in favor of claimant. Although we shall be obliged to revert to the proceedings at this point, it is proper here to state that a disallowance of compensation on the evidence then before the compensation authorities and the court below could not as a matter of law be sustained. Whether there is competent evidence to support the findings and conclusions of the compensation authorities is a question of law to be determined by the courts.
 
 Vorbnoff v. Mesta Machine Co. et al.,
 
 286 Pa. 199, 133 A. 256. Conceding that deceased had used a trolley wire as a source of current supply to fire high explosives, instead of a battery, and conceding that he may have intended to do so again, no proof is found therein that he received his fatal injuries in the commission of an act in direct violation of the law as defendant alleged. Neither previous violations nor intentions are alone sufficient to sustain a disallowance of compensation in this case. It appears that deceased and his helpers had used a trolley wire as a method of firing on previous occasions. Just prior to the accident deceased had prepared three charges, the explosion of one of which resulted in the injuries to deceased. The other two charges remained unexploded. When charges were fired from a trolley wire, a wire was extended the full length of the tunnel, which was about 300 feet away from the face where the charges were to be fired. The latter was then attached to a battery wire on a spool, which would
 
 *481
 
 be broken off at the required length and connected to the electrical exploder, and another wire would be attached to a rail to act as a ground. When the lead wire was then brought in contact with the trolley wire it would cause the charge to be exploded. It may properly be assumed that deceased, on this particular occasion, contemplated using the trolley wire as a means of exploding the charges. For a long time a lead wire had extended along the tunnel. There is nothing in the testimony indicating that, on the occasion in question, the firing circuit had been completed with the exception of contacting the distant end of the lead wire with the trolley wire. There is no evidence to show that the end of the long lead wire nearest the charge had been connected to the charge by the battery wire. But there is uncontradicted testimony that the charge which injured the deceased was not exploded by the lead wire’s having been brought in contact with the trolley wire. There was no competent testimony presented before Beferee Lewis to establish the cause of the accident, and the conclusion that deceased received his injuries in the commission of an act in direct violation of the law was not warranted. The burden to so prove by a clear preponderance of the evidence was upon defendant
 
 (Gima v. Hudson Coal Co.,
 
 supra;
 
 Haywood v. Henrietta Coal Co. et al.,
 
 supra), and the evidence to refute the claim should at least approximate that required in criminal cases
 
 (Labuck v. Mill Creek Coal Co., 292
 
 Pa. 284, 141 A. 35;
 
 Marinho v. Glen Alden Coal Company,
 
 115 Pa. Superior Ct. 279, 175 A. 715). The disallowance of compensation cannot be supported by conjecture. The only conclusion warranted by the findings of fact, which were supported by competent evidence, as they appeared at the time of the appeal to the court of common pleas, is that deceased was in the course of his employment when he sustained the accidental injuries on June 30, 1932, and that claimant was entitled to compensation as pro
 
 *482
 
 vided by the Workmen’s Compensation Act of 1915, as amended (77 PS §1 et seq.). The eighth and basic finding of fact of the referee (affirmed by the board), upon ■which disallowance was based, is unsupported by the evidence. The evidence may disclose an intent, but there is no proof of an attempt by deceased to do the act as found by the referee and board.
 

 But the case was not terminated on the appeal in the manner which we think it should have been. The case is, unfortunately, still pending six years after the accidental death of claimant’s husband. On November 22, 1934, the record was remitted to the board for more specific findings. On December 12,1934, the record was remanded to a referee with instructions to hear additional testimony. Thereafter testimony was taken before Referee Conniff who had succeeded Referee Lewis. This testimony was confined to\ the posting of the powder rules. The findings of fact, conclusions of law, and order of disallowance of Referee Lewis were reaffirmed with the addition of the following finding of fact: “9. From the preponderance of the credible testimony and evidence given in this case considering the whole record thereof we conclude that it is clearly established that the rules for the use of explosives under Rule '29 of Article XII the Anthracite Mining Laws of Pennsylvania, approved June 2,1891, P. L. 176, were fully and properly promulgated in accordance with the requirements of said Rule 29 by and through the poster identified on the record as Defendant’s Exhibit ‘A,’ authenticated by the proper endorsement of the manufacturers of the powder used at the time of the accident and approved by the Superintendent of the Mine wherein the accident occurred, which conclusion we do find as a Fact.” From this decision of the referee, claimant again appealed, after filing exceptions, to the board, which set aside the seventh and eighth findings of fact of the referee, substituting
 
 *483
 
 its own, and in addition made six further findings of fact. The seventh finding of fact made by the board in place of the seventh finding of fact of the referee was, in effect, that the “powder rules” posted in and about the mines in pursuance of rule 29 of the Anthracite Mine Law (52 PS §424) prescribed the use of blasting machine or firing battery in setting off charges of high explosive. The board set aside the referee’s conclusions of law, and in conformity with its own findings of fact allowed compensation and made an award to claimant. In its opinion dated August 25, 1936, wherein this action is set forth, the board stated: “After a careful analysis of the testimony covering the circumstances surrounding the happenings of the accident, we are surprised to find that there is no legally competent evidence whatsoever to support a finding that the accidental explosion resulting in the injuries and death of Frank Serafini has any causal relation with his violation of the rule.” Defendant appealed to the court of common pleas, and while this appeal was pending defendant petitioned the Workmen’s Compensation Board for leave to produce additional testimony as to the cause of the explosion. The petition concluded with the following prayer: Wherefore, Petitioner prays that your Honorable Board withdraw the above case from the said Court of Common Pleas and make an order granting a rehearing in order that the Defendant may be given an opportunity to produce further testimony.” On February 12, 1937, a hearing was held before the referee and additional testimony presented by defendant, the gist of which was that the explosion must have been caused by the leakage of electrical current from the trolley wire into a circuit prepared by deceased for firing the charges. There was also testimony that the charge might have exploded without leakage into a firing circuit, due to the wet conditions in the working place.
 

 After the record had been returned to the board, in its
 
 *484
 
 opinion of April 13,1937, it reaffirmed and republished its opinion of August 25,1936.
 

 Defendant then appealed once again to the court of common pleas, which reversed the board and entered judgment for the defendant. The court below apparently based its action on two reasons: (1) That when the record was remanded to the board following the first appeal to the court of common pleas it was for the purpose of making specific findings relating to the “powder rules”; that, with the exception of the seventh finding of the board and the ninth finding of the referee (which the board left undisturbed), the board was without authority to make the other findings, because, upon such reference, the board could make only specific findings of fact upon the question submitted by the court; (2) that the additional findings made by the board were not warranted by the evidence. Judgment having been entered for defendant, claimant appealed to this court.
 

 In appellee’s brief it is stated that there is no question but that deceased was killed as the result of an accident which occurred while he was working for appellee, and that the burden of proof of a violation of law by deceased was on appellee. Prior to the rehearing, it is obvious that appellee did not meet the burden of proof which devolved upon it. The referee and board could not properly determine from the evidence that deceased received his injuries in the commission of an act in direct violation of the law, and the referee’s eighth finding of fact, affirmed by the board, was unsupported by any competent evidence. It is not what deceased had done in the past, or what he might have intended to do in the future; what he was doing at the time of the accident is determinative. The record upon which the appeal was first taken to the court of common pleas, supplemented by the testimony taken and the relevant findings of fact made therefrom by the compensation authorities after the reference by the court of common pleas for more specific
 
 *485
 
 findings, does not disclose any evidence that deceased was injured in the commission of an act in direct violation of the law.
 

 We agree with the statement of the court below in its opinion, and with the contention of appellee that, when the court below remitted the record for more specific findings of fact, the board had no authority to consider the case de novo. Additional hearings could be held either by the board or by the referee on behalf of the board, and specific findings of fact made upon the questions submitted by the court and designated by it as essential for the purpose specified. In
 
 Costello
 
 v. Schumacher, 114 Pa. Superior Ct. 296, at page 299, 173 A. 732, at page 733, in an opinion by Judge Cunningham, this court stated that under such circumstances “the only thing the board was directed by the court to do, and the only thing it had any power to do, was to make specific findings of fact upon the questions submitted by the court and return these findings, with the record, to the court where the appeal was still pending. ......After disposing of any exceptions to these findings of fact, its sole duty and power was to return the record, with its findings, to the common pleas. Any and all questions of law arising under or out of the facts so found were for the consideration of the court in disposing of the appeal then pending before it.” The findings of fact, conclusions of law, and award made by the board on August 25, 1936, subsequent to the reference .by the court of common pleas, except such findings of fact as were in pursuance of, and in conformity with, the reference, would therefore be without authority, and would ordinarily have to be disregarded in toto. However, after the entire record had been returned to the court of common pleas, and before final action by the court, appellee presented its petition for a rehearing, which the board granted. Pursuant thereto the record was returned to the board. Further testimony was then
 
 *486
 
 offered by both appellant and appellee as to the cause of the accident. Thereafter, as the board stated, the evidence was conflicting on the question as to how far deceased had proceeded with his preparations to fire the charges. The board, in its opinion of April 13, 1937, which followed the rehearing, affirmed and republished its opinion of August 25,1936, which included an award to appellant. On the rehearing the entire record was before the board. In arriving at its conclusions it considered not only the testimony taken at the last hearing, but all of the evidence appearing in the record.
 
 Greeby v. Philadelphia Asbestos Co. et al.,
 
 120 Pa. Superior Ct. 9, 181 A. 452. Such action was within the authority of the board, and it was likewise empowered to vacate the previous findings and conclusions and make new findings and conclusions. Such new findings of fact will be sustained if there is competent evidence to support them. Instead of making new findings of fact, conclusions of law, and an award, it adopted the expedient of incorporating in its opinion the action which it improperly took on August 25, 1936. This procedure unquestionably is subject to criticism, although we do not deem it sufficiently erroneous to warrant a reversal in this case. The evidence was sufficient to support the findings of fact of the board that the charge of dynamite accidentally exploded had not been connected to the firing circuit, and that an alleged violation of rule 29 of the Anthracite Mine Law (52 PS §424) by deceased was not the cause of the explosion resulting in his injury and death. The board’s conclusions that deceased was acting in the course of his employment with appellee at the time of the accidental injuries resulting in his death, and that it was not established by appellee by a clear preponderance of the evidence that deceased received his injuries as a result of a violation of rule 29 of the Anthracite Mine Law (52 PS §424) properly followed.
 

 When a rehearing is once granted by the board, it is
 
 *487
 
 unrestricted in receiving additional competent testimony and granting such relief as justice may require, subject only to the limitations within the act.
 
 Manley v. Lycoming Motors Corporation, Etc.,
 
 83 Pa. Superior Ct.
 
 173; Repper v. E. Eichelberger & Co. et al.,
 
 120 Pa. Superior Ct. 19, 181 A. 379.
 

 Judgment is reversed, and the record is remitted to the court below, with direction to enter judgment in accordance with the award.
 

 [1]
 

 Rule 29. “When high explosives other than gunpowder are used in any mine, the manner of storing, keeping, moving, charging and firing or in any manner using such explosives shall be in accordance with special rules as furnished by the manufacturers of the same. The said rules shall be indorsed with his or their official signature, and shall be approved by the owner, operator or superintendent of the mine in which such explosives are used.”