Bucci et ux. *v.* Lincoln Coal Company, Inc., et al., Appellants.

Submitted April 23, 1940.

Before Keller,
P. J., Cunningham, Baldrige, Stadtfeld, Parker,
Rhodes and Hirt, JJ.

*Francis A. Dunn,* for appellants.

*Samuel R. Di Francesco,* for appellees.

Opinion by Baldrige, J., June 26, 1940:

George Bucci, single and 21 years and 5 months of age, was killed May 5, 1938, by a fall of rock in defendant's coal mine where he was employed. A claim petition was filed alleging that his parents and sister, 11 years of age, were partially dependent for support upon the deceased. The defendants filed an answer denying dependency and averred that deceased did not meet with an injury in the course of his employment.

The referee held that although the claimants were partially dependent they were not entitled to an award as the decedent had taken himself out of his employment

at the time of his death, by violating the Bituminous Mine Act in not working in the place assigned to him and was engaged in taking out rib coal contrary to express orders. The board upheld the finding of dependency but sustained exceptions to the referee's findings and conclusions that deceased was violating the Bituminous Mine Act at the time of his accident and awarded compensation. Upon appeal to the court below that action was affirmed.

Special Rule I, Article XXV, of the Bituminous Mine Act, approved June 9, 1911, P. L. 756 (52 PS §1251) provides that a miner shall work in the place assigned to him and shall not leave it for another place without permission. Section I, Article XXVI, of the Act (52 PS §1341) provides that any person who shall disobey any order "whereby the lives or the health of the persons employed, or the security of the mine or the machinery, are endangered, shall be deemed guilty of a misdemeanor ......" The evidence shows that on the date in question the deceased and his two buddies were engaged in second mining, that is, removing pillars or stumps and were retreating in their work toward the mine opening.

There was testimony that the deceased was ordered to work in the back heading. William Donaldson, one of the buddies of the deceased, testified, however, as follows:

"Q. Were you told to work at the heading stump at No. 4 Room?

"A. Yes, and the back heading too. We had the both places."

* * * * *

"Q. Where did you find George?

"A. Up above the hoist with the rock on top of him.

"Q. Near what room?

"A. It was No. Four room ......"

On this day, when these men went to work they found three cars—two loaded and one empty. The empty car was loaded in the back heading after which the three cars were taken out and eight empties brought in. Three were placed in the back heading and one was left in No. 4 heading, at or near room No. 4, the place where Bucci was killed.

Taking into consideration that the empty car was left at one of the places Donaldson said the deceased was told to work, which was approximately 170 feet from the back heading, where the appellants say deceased was assigned to work, we think there was sufficient competent evidence to support the finding that Bucci, when killed, was in the course of his employment. He was doing the kind of work for which he was employed, namely, mining coal at or near a place he was ordered to work. There was no break of a pronounced character in his employment or abandonment of his work in one place and the performance of it at another without permission, or the doing of something wholly foreign to his usual work: *Shoffler v. Lehigh Valley Coal Co.*, 290 Pa. 480, 139 A. 192; *Adams v. Colonial Colliery Co.*, 104 Pa. Superior Ct. 187, 158 A. 183; *Tappato et al. v. Teplick & Eisenberg Co.*, 133 Pa. Superior Ct. 231, 2 A. 2d 545.

When the body of the deceased was found under the pile of rock his pick was sticking in the rib of coal. The appellants contend that this circumstance showed he had been skinning the ribs in violation of orders. The location of the pick and the fact that the car was partly loaded was evidence that would undoubtedly have justified the fact finding bodies in concluding that the decedent had violated orders, but that was circumstantial evidence only, not conclusive notwithstanding that the condition of the rib tended to support the conclusion that coal had been removed therefrom by some-one.

The coal in the car may have been road coal which

had fallen from the cars or from the rib. John Koscho, the assistant foreman called by the defendant, testified that when the stumps or pillars are being removed the pressure tends to loosen and break up the coal along the rib. In any event, where the coal that was in the car came from is a matter of conjecture. Although we might have found otherwise than did the board, our function is not finding facts. We are limited to determining whether there was sufficient competent evidence to support the finding, and if the law has been properly applied.

The defense that the deceased violated the law is an affirmative one, with the burden resting on the defendant to establish it by such a clear preponderance of evidence that at least it approximates that required in criminal cases: *Parkins v. Hillman C. & C. Co.*, 114 Pa. Superior Ct. 358, 174 A. 784; *Marinho v. Glen Alden Coal Co.*, 115 Pa. Superior Ct. 279, 175 A. 715; *Haywood v. Henrietta Coal Co.*, 118 Pa. Superior Ct. 371, 180 A. 34; *Serafini v. West End Coal Co.*, 131 Pa. Superior Ct. 476, 200 A. 245. In our judgment we cannot say as a matter of law that the board erred in concluding that the defendant failed to carry the burden imposed upon it.

That brings us to the question of dependency. The evidence, in our judgment, was sufficient to establish that the parents were partially dependent for support and maintenance upon the deceased, who lived at home. Although the father earned $951.81 the year previous to his son's death, that amount was insufficient to meet all necessary expenses of maintaining the home. The son's earnings amounted to $688.38 in the six months prior to the accident. A very substantial part thereof was used to pay the rent, light, grocery, and other bills. It was not necessary to show that the parents were solely dependent upon the deceased. If they are dependent to any extent it is sufficient: *Franey v. Glen Alden Coal Co.*, 105 Pa. Superior Ct. 448, 161 A. 433;

*Ackerson et al., v. Clair R. Quereau, Inc. et al.,* 113 Pa. Superior Ct. 52, 172 A. 171; *Kelly et ux. v. Hudson Coal Co.,* 119 Pa. Superior Ct. 405, 179 A. 753.

The award to the sister, a member of the household of her parents, however, cannot be upheld. The Act of June 4, 1937, P. L. 1552, sec. 1 amending Section 307 (6) (77 PS §561) provides that if there be no dependent parent receiving the maximum compensation payable under the Act, then minor brothers or sisters may be awarded compensation if actually dependent upon the decedent for support at the time of his death. Here there are dependent parents who were awarded $10 per week, the maximum amount provided by the Act for partial dependency. Furthermore, the sister living with her parents, was not actually dependent upon the deceased for support at the time of his death. Her father was employed and it was he who was legally obligated to support his minor child. She, therefore, was not entitled to any award.

The appellees take the further position that the appellants cannot invoke the rules of the Mining Act as the employer failed to comply with Gen. Rule 6, Article XXV (52 PS §1286) by not posting the rules at a conspicuous place at or near the main entrance of the mine. In view of our disposition of this appeal it is unnecessary to consider that matter.

The judgment of the court below is affirmed as modified and the record is remitted to the court below to the end that judgment may be entered in accordance herewith.