## Turian, Appellant, *v.* William Clark-Rea Coal Company et al.

Argued April 15, 1943. Before KELLER, P. J., BALD-RIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*Arthur I. Zeiger,* for appellant.

*Harry J. Nesbit,* for appellees.

OPINION BY RENO, J., July 16, 1943:

The long and complicated record before us for review presents only one question: Is there sufficient competent evidence to sustain the order of the workmen's compensation authorities terminating the compensation agreement?

On May 6, 1936, appellant, his employer and the insurance carrier executed a compensation agreement which recited that appellant, on February 17, 1936, in the course of his employment as a miner, was injured when "piece of coal jumped into my [left] eye." It provided for compensation for an indefinite period. On August 21, 1936, the employer and insurance carrier filed a petition to terminate the agreement averring that appellant was able to return to work on July 4, 1936. After testimony was taken (including that of Dr. Edward Stieren, appellees' witness, who testified that appellant had recovered 70% of his vision, leaving him with an eye useful for industrial purposes), the referee granted the petition to terminate as of July 4, 1936. Appellant's appeal to the Workmen's Compensation Board was sustained and, without passing upon the evidence, the case was remanded for (a) taking the testimony of two doctors whose affidavits had been offered by appellant in support of his petition for a rehearing and (b) the recomputation of appellant's wages. Additional medical testimony was taken, including that of Dr. Lewis W. Statti, an impartial

medical expert appointed by the board, who testified that appellant retained a visual efficiency of 75-80% in the left eye which amounted to good industrial vision. The referee again terminated compensation. A second appeal was taken and the board, fearing that the accuracy of the findings of Dr. Statti might be affected by the difficulty which appellant had in speaking and understanding English, again remanded the record for additional testimony upon the condition that appellant deposit a sum sufficient to pay an impartial medical expert and to provide a competent interpreter to assist in the examination. Under this order the referee conducted a third hearing at which Dr. Glendon E. Curry, the impartial medical expert appointed by the board, appeared and testified.

The referee filed an order terminating the compensation based upon the following finding of fact: "4. From a consideration of the testimony of record and of the testimony of Dr. Glendon E. Curry, the impartial ophthalmologist appointed by the Workmen's Compensation Board, we find as a fact that such injury as was sustained by the claimant while in the course of his employment had fully healed as of July 4, 1936, and that any loss of vision in the claimant's left eye was due to cause or causes not in any way the result of or associated with the accident herein complained of; further finding as a fact that all disability resulting from the injury sustained by accident had ceased on July 4, 1936, to which date claimant had been compensated." The board sustained the referee's findings of fact, the conclusions of law and the order. The court below dismissed the appellant's appeal.

Reducing Dr. Curry's testimony to terms within a layman's understanding, and omitting the process of reasoning which fortifies his professional opinion, it comes to this: Appellant suffered the loss of industrial vision in his left eye, but that condition was not caused by the accident of February 17, 1936; it resulted from

a disease of the eye caused by infection of one or more of the functional organs of the body. This professional opinion was based upon an examination of appellant in which he was assisted by the interpreter and, at referee's direction, upon a study of the medical and other testimony adduced at the prior hearings. It is true that Dr. Curry's testimony conflicted with that of other physicians called by appellant at the previous hearings. However, the referee and the board rejected the testimony of appellant's witnesses and based their final findings and conclusions upon the testimony of Dr. Curry, Dr. Statti and Dr. Stieren. Taken together, their testimony which need not be here recited beyond the brief summaries already stated, amply supports the action of the compensation authorities.

Having ascertained that there is sufficient competent evidence to support the findings of fact our duty ends. "This court is not a fact finding body, and if there be any legally competent evidence, or a pure inference of fact fairly deducible therefrom, the award must be sustained, although we might differ from the conclusion thus reached: Ford v. Dick Co., 288 Pa. 140, [135 A. 903]. We cannot substitute our judgment for that of the referee or the board, as the compensation act has delegated to them the exclusive function of determining these facts. An appellate court will not review such conclusion": *Morrow v. Monarch M. Sales Co.,* 109 Pa. Superior Ct. 162, 165, 167 A. 401.

Another contention which appellant strenuously urges relates to the order of the board under which Dr. Curry was appointed. It provided: "We accordingly remand the proceedings to the referee with instructions to appoint an impartial ophthalmologist to examine the claimant at the expense of the claimant who is to deposit the fee therefor in advance with the referee, and who is likewise to furnish at his own expense an interpreter to be present at the examination to assist the impartial expert to *determine the neces-*

*sary facts insofar as they are garnered only from the lips of the claimant himself"* (Italics supplied). This, appellant argues, "limited him [Dr. Curry] to testify only as to factual matters that are to be garnered from the lips of the claimant." If appellant's construction of the italicized phrase were adopted, Dr. Curry would have been a mere channel of communication between appellant and the board. Obviously, the appointment of a distinguished medical expert was not required for that function. The order, perhaps unfortunately phrased, refers to the duties of the interpreter as well as those of the expert and means that the expert, in garnering facts from the lips of the appellant, shall secure them only through the medium of the interpreter thereby avoiding the difficulty which the former expert, Dr. Statti, had experienced.

Judgment affirmed.