## James, Appellant, v. Susquehanna Collieries Co.

Argued March 14, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALD-
RIGE, STADTFELD, PARKER, and JAMES, JJ.

*Roger J. Dever*, for appellant.

*Henry A. Gordon*, and with him *T. G. Wadzinski*, for
appellee.

OPINION BY TREXLER, P. J., July 13, 1934:
William James died on August 19, 1929 in the mine

328

of the defendant company from inhalation of gas. His widow applied for compensation. The referee granted it. The board approved it. The lower court sent it back to the board for more definite finding. The board again granted compensation, affirming its previous action and the court, upon defendant's appeal, reversed the award and entered judgment for the defendant.

James, the claimant's decedent, together with Evans and Keiser was employed at a day rate to lay a track in a certain gangway preparatory to taking out the stumps and pillars in that gangway. On the day of James' death, he, and two other companions, had nearly completed the laying of the track and were waiting for a driver to bring in an additional rail. James and Keiser left the place of work in the gangway, traveled a distance of about 150 feet toward the face of the gangway to what was known as a manway. When they reached this manway they took a ladder and climbed up to what is known as the monkey heading. There were two breasts which opened up at this heading. James went up about 12 feet. While in one of them he encountered the gas which killed him. The purpose of these two men in going into these two breasts was to see whether there was any loose coal in there. They planned to get the loose coal down into the gangway below where they could load it and in this way hoped sometime thereafter to get the benefit of it in their pay for coal mined in the gangway. At the time they were laying the track they were receiving a definite per diem. The place where James was stricken was between forty and fifty feet above the gangway. They went to the heading while the rail was being brought. The inside mine foreman had told them in the morning, "We won't pay for anything above that monkey heading, you have no business there, coal is no good up there,

it is dangerous, so stay down out of there.'' In order to start mining, it was requisite to get permission from the fire boss. On the day in question no permission had been given to begin mining.

The board found in making the investigation of the heading that the decedent was engaged in employment required of him by the nature of his duties, but the testimony of Evans does not bear this out. The question was asked: ''Q. Had you and James and the rest of them been given the job of taking out the coal where James went up to explore that day? A. There was no coal to be taken out above that, that is, we weren't to blast any coal above the monkey heading.'' The testimony shows that these places were distinct and separate parts of the mine. There was evidence that the place to which he and his ''buddy'' went had been for upwards of a year abandoned and exhausted and was not a part of the mining operations where James and his companions were to work after the track was laid, and where the work of mining would be resumed. The first shot would be from the top of the gangway, not in the monkey heading. The place where James and Keiser went was not accessible in the ordinary way. It had to be reached by getting a ladder. Where James was smothered was about 12 feet above the monkey heading and that was thirty (30) feet from the gangway, so James was then in the old workings between forty and fifty feet atop of the gangway. The air in the gangway where the track was being laid was always good. The monkey heading 30 feet above provides a return, which is required for the circuit which the air must take.

There is nothing in the case which would show that the prospective employment of these men would take them into the portion in which the casualty occurred. It was forbidden area and the only reason that can be

taken from the testimony for their going there was that they might find some loose coal, which they could take for their profit.

Evans, the companion of James, frankly testified, "we were not to blast any coal above the monkey heading,"—that his work would be to take coal from the gangway. The monkey heading was at another place, and in the first place the natural thing to do when mining was resumed was to start at what Evans called the inside stump, which was 150 feet to 200 feet from where James lost his life.

They were servants of the defendant company and their actions were definitely controlled by the boss, who had charge of them. Without permission of the fire boss they could do no blasting or mining of coal. They could not begin any new work, without the order of the mine foreman. The obtaining of coal is the ultimate object of all employed in the mining industry, but it certainly could not be held that it was in the course of employment of a miner to go and hunt for sources of coal, while he was engaged in a definite job in a mine, especially so when he went and visited a place where he was directed not to enter.

The lower court summed it up very tersely: "Nor does it seem, under the testimony, that the loose coal contemplated as incidental to the taking out of the stumps embraced coal quite a distance away, not in the gangway where the stumps were to be removed but in the monkey heading or air shaft above, difficult of access, and from which coal was not to be removed for the owners of the mine. In the face of the specific directions that the coal in this upper chamber was not to be removed and that the men were not to be paid for its removal and the statement of the foreman that it was dangerous there, which the board evidently believed, although there was no reference to any specific danger, the decedent's going to this place of danger

must be deemed in effect the act of a stranger or trespasser which precludes any compensation recovery for his death.'' See Macenka v. Lehigh C. & Nav. Co., 104 Superior Ct. 591, 159 A. 197; Dickey v. Pittsburgh & L. E. R. R. Co. 297 Pa. 172, 146 A. 543; Shoffler v. Lehigh Valley Coal Co., 290 Pa. 480, 139 A. 192; and Palla v. Glen Alden Coal Co., 105 Pa. Superior Ct. 96, 160 A. 157.

The board comments upon the fact that if this were a dangerous locality, the colliery company was violating the statutory command of the legislature in its failure to protect the lives and safety of men whom it has employed in dangerous occupations. The place where these men were working was absolutely free from gas and in order to get to where James was killed, they had to go a considerable distance and deliberately take a ladder to get into the monkey heading and crawl into the old worked breast where the unfortunate accident occurred. It does not appear by anything that is in the record that any statutory duty of inspection had been omitted by the employer.

The judgment is affirmed.