Soroka et ux., Appellants, *v.* Philadelphia & Reading Coal & Iron Company.

Argued December 13, 1939.

Before KELLER, P. J., , CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Roger J. Dever,* for appellant.

*Penrose Hertzler,* with him *E. Mac Troutman,* and *M. M. Burke,* for appellee.

OPINION BY KELLER, P. J., January 30, 1940:

The proceedings in this workmen's compensation case were complicated by an oversight of the court below and a consequent misunderstanding by the board, which were later cleared up by the court.

Anthony Soroka was employed by the defendant coal company at its West Shenandoah Colliery. He was killed on September 21, 1931, while riding in an empty mine car up an inclined plane in said mine, the empty cars being drawn up by the force or pull of loaded cars descending the plane. He was unmarried. His parents, these claimants, presented a claim for compensation on the ground of actual dependency and the referee made an award for partial dependency. Dependency was not seriously contested by the employer but liability for compensation was denied on two grounds: (1) That at the time of his death Soroka was violating the rules of the Anthracite Mine Law (Act of June 2, 1891, P. L. 176), which have the force of law; and (2) that he was violating the positive orders of his employer not to ride in such cars, amounting to a temporary abandonment of his employment. The referee found that Soroka was not violating the provisions of the Anthracite Mine law; that he was violating positive orders of his employer, but not in such a manner as to take him out of the course of his employment.

On appeal to the board, the record was returned to the referee to take additional testimony relative to the duties Soroka was to perform at the time he met his death. After the taking of such testimony the referee, on March 29, 1933, disallowed the claim, on the ground that the death of claimants' son resulted from an act done contrary to the positive orders of his employer and such as amounted to an abandonment of his employment. The findings of fact on which this conclusion was based were in part as follows:

"(4) Decedent was employed as a driver by defendant company on the fourth lift in the mines of its West Shenandoah Colliery located in Schuylkill County, Pennsylvania, on September 21, 1931. On this date at or about 1:30 o'clock P. M. he had assisted the man employed at the bottom of the plane to replace upon the track a derailed car. At a point about fifty feet from the bottom of this plane decedent was approached by the assistant mine foreman, his immediate superior, and instructed to eat his lunch and then proceed to the top of the plane and assist the topman in the work there. He had received like instructions on other occasions when he worked upon this plane at points where his services were required. The assistant mine foreman after delivering his instructions to decedent walked with him toward a point known as the tender slope, a distance of three hundred and fifty feet, where the foreman left decedent. The man employed at the bottom of the plane, known as the bottomman, shortly thereafter observed decedent with his cans upon his shoulder running toward an empty mine car about to be hoisted up the plane. Decedent jumped upon the rear of the car, from which he alighted when told to do so by the bottomman. The bottomman then signaled the topman to begin hoisting the car up the plane. As the car got into motion decedent boarded it to convey him up the plane to the point of his newly assigned duties. This car upon which he

rode was empty and unattached to other cars. Because of the speed the car traveled up the plane it indicated loss of its control on the part of the topman. It ascended the plane 'like a streak of lightning.'

"(5) We find that near the hour of 3:00 o'clock P. M. the topman in charge of operating the plane found decedent with his body mangled in a dying condition under the empty car which had been hoisted to the top of the plane. Decedent died shortly after being found. The empty car was against the drum containing the brakes employed in controlling the cars operated up and down the plane. The wheels of this empty car were off the track.

"(6) We also find that at the foot of this plane in chalk writing upon a plank was a notice to all employees reading, 'Men are forbidden to walk or ride on this plane.'

"(7) That decedent violated no part of the Anthracite Mining Laws of Pennsylvania of June 2, 1891, P. L. 176. That his death was the result of an act contrary to the positive order of the employer, as before mentioned."

It was shown that there was a "traveling way" and a "tender slope" by which Soroka could safely have gone from where he was to the top of the plane.

On appeal by claimants to the board, the referee's order of disallowance was affirmed on August 31, 1933, the board saying, inter alia:

"It further appeared that decedent was last seen running in and 'jumping on the back of the empty cars' [1]; as this witness 'saw a [miner's] light on the back of it,' as the car went 'up there like a streak of lightning'.[2] [38a] ......

[1] See Rule 41 of Art. XII of Anthracite Mine Law of 1891, P. L. 176, p. 200.

[2] See Rule 51 of Art. XII of Anthracite Mine Law of 1891, P. L. 176, p. 201.

"A careful reading of the testimony, however, leads us to the conclusion that decedent's duties were not such as to require him to ride the trip up in order to reach the top of the plane, where he was directed to go, and where he could have gone by the accommodation slope or traveling way for men. In attempting to ride the car up the plane, which his work did not require him to do, and in apparent defiance of his employer's positive orders, in order to reach the top quickly, decedent was acting contrary to the positive orders, and removed himself from the class of accidents constituting the exceptions to the rule as laid down in the above cited opinion: *Price v. Glen Alden Coal Company*, 100 Superior Ct. 260."

Claimants, thereupon, appealed to the court of common pleas, which ordered the record returned to the board to make specific findings of fact as to whether the employee had any duty to perform on the plane in connection with the operation of the plane or the cars, saying:

"Had the Referee found,—and there is no finding whatever upon this subject—that the decedent had no duty to perform on the plane or the cars in connection with the operation of the plane or the cars, then the violation of the orders would have taken him out of the course of employment and compensation would not be payable ...... hence in a very important feature of this case we are lacking specific findings of fact and conclusions of law." And after quoting the extract from the opinion of the board just above cited, the court went on to say:

"The subject of this conclusion that the decedent's duties were not concerned with the plane or the cars operating thereon should have been made the subject of a specific finding of fact and conclusion of law either upon the part of the Referee or the Workmen's Compensation Board. Without this, we cannot properly apply

the law since we have already stated that the violation of positive orders does not of itself take an employee out of the course of his employment and forfeit compensation ...... The referee found that the decedent in riding the plane violated positive orders. He or the Workmen's Compensation Board should have gone one step further and found as a fact whether his duties concerned the operation of the plane or the riding of cars and whether there was any connection whatever between his duties and the cars and the plane. Then the conclusion of law should have been drawn whether when the accident occurred he was in the course of employment. In order that specific findings upon this point may be made by the Workmen's Compensation Board, we will return the record to it."

The court's order was as follows:

"And now, December 11, 1933, the record in this case is remitted to the Workmen's Compensation Board for specific findings of fact and conclusions of law in accordance with this opinion."

In including in this order the direction to the board to make 'conclusions of law', the court overlooked that the case was not returned generally to the board for its determination and decision, but that the *record* was returned to the board under section 427, as amended by the Act of June 26, 1919, P. L. 642, pp. 665, 666, only to make certain specific findings of fact, which having been found should be returned to the court, where the appeal was still pending, to apply the law to the facts so found by the board.

The printed record on appeal is all mixed up, the various steps not being printed in chronological order, but it appears that the board, not unnaturally, misunderstood the situation and proceeded to hear and decide the case anew, and on February 8, 1934, vacated and set aside the fourth, fifth and sixth findings of fact, and the conclusions of law filed by the referee on March

29, 1933 and in lieu thereof substituted four supplemental findings of fact, and concluded that the duties of the deceased employee on September 21, 1931 were so inter-related and connected with the operation of the gravity plane that at the time of the accident he had not abandoned his employment within the meaning of the Act; "and [it] having been found by the Referee, as affirmed by the Board, that he violated no part of the Anthracite Mining Act of June 2, 1891, P. L. 176, we conclude, as matter of law, that the accident and resulting injuries were sustained by the decedent while in the course of his employment"; and awarded compensation to the claimants, directing that if no exceptions were filed to the supplemental findings of fact and conclusions of law within ten days they should be confirmed absolutely and the record returned to the Court of Common Pleas of Schuylkill County.

Exceptions were filed by defendant on February 16, 1934 to the supplemental findings of fact and the conclusions of law of the board, and to the failure of the board to find that the deceased employee came to his death as a result of violating Rules 16 and 51 of Article XII of the Anthracite Mine Law of June 2, 1891, P. L. 176; all of which exceptions were overruled by the board on June 12, 1934 and the record ordered to be returned to the Court of Common Pleas of Schuylkill County.

That court on October 29, 1934 again remitted the record to the board for more specific findings of fact, pointing out that the pertinent findings in the supplemental findings of fact were not supported by any evidence and saying:

"If the Board cannot make such findings from the evidence already a part of the record, a hearing should be had by it or the Referee, when his [the deceased employee's] duties may be shown and the facts found."

Accordingly on December 12, 1934, the record was remanded by the board to the referee for the purpose of making the more specific findings of fact directed by the court, after such hearing as might be necessary.

A hearing was had by the referee on May 14, 1935, but neither side called any witnesses, both choosing to rely on the record as it stood. The referee, thereupon on July 31, 1935 made the following finding of fact:

"We find that the top man stationed at the head of the plane above the fourth level and who operated the plane machinery and performed duties incident to hoisting and lowering cars was experiencing difficulty in the performance of his duties because of the failure of the brakes of the plane machinery to properly control the speed of the cars. The decedent was directed to proceed to the top of this plane where he was to assist the top man in the performance of the duties incident to the operation of the plane and to push cars."

No exceptions were filed by either party to this finding and on October 23, 1935, the board adopted the finding of fact of the referee as the finding of the board.

It may be noted that the board recognized that the matter was pending in the Court of Common Pleas of Schuylkill County on appeal by *claimants,* for the opinion and order had the caption, "Appeal by claimants from disallowance of Referee Eaches, District No. 2."

An exception was filed to this order of the board by the defendant on November 2, 1935, setting forth that there was no legally competent testimony to support the finding.

The file became mislaid in the board's records for well over a year, but on August 13, 1937, the exception was dismissed and the record ordered "returned to the Court of Common Pleas of Schuylkill County, where an appeal is presently pending."

The court after reviewing the basic findings of the referee of March 29, 1933, which had been approved by the board and had not been affected by the order of the court returning the record for more specific findings of fact upon one point, under section 427 of the Workmen's Compensation Act as amended in 1919, P. L. 642, pp. 665, 666, and calling attention to the procedural

error of the board as above referred to, correctly stated the law applicable to the point with respect to which the court had returned the record for specific findings of fact, as follows:

"There can be no doubt, under all the evidence in the case, that the decedent violated positive orders of his employer in riding on the car up the plane and that this would amount to an abandonment of his employment, making his death non-compensable, unless the hostile and defiant act concerned instrumentalities, places or things about or on which the employee had a duty to perform and with which his employment connected him. Violation of orders is not enough." (citing cases).

The court then accurately summarized the findings of the referee approved by the board, as aforesaid, as follows:

"(1) Decedent, a driver employed on the fourth lift of the defendant's mine, on the date of his death, about 1:30 o'clock P. M., had assisted the man at the bottom of the plane to replace a derailed car upon the track. Sometime thereafter, his superior directed him to assist the man at the top of the gravity plane.

"(2) Although all the employees, including decedent, were notified not to ride or walk on the gravity plane, and in direct opposition to the command of the bottom man who controlled the operation of the plane from below just before the accident, the decedent boarded a car to get to the top of the plane, the place of his new duties, and met his death by being thrown under the car on which he was riding.

"(3) The duties to be performed by the decedent at the top of the plane were to assist the top man in the performance of the duties incident to the operation of the plane and to push cars.

"(4) Near the plane, there was a slope for the use of employees in ascending to the top of the plane"; and then added:

"The conclusion of law is that his death resulted through an act contrary to the positive orders of the employers, amounting to an abandonment of his employment, and is not compensable.

"This conclusion is amply supported by the evidence, since nowhere does it appear that the decedent had any duties to perform on this slope or plane this day except at the very top. Along the incline, he had no work to do and it is quite apparent from the uncontradicted evidence that, knowing it was forbidden, he rode this plane for his own convenience instead of walking a few hundred feet to ascend a slope used for purposes of getting to the top. There was no necessity for him to ride this plane, under the evidence, for any purpose, and certainly his duties had nothing whatever to do with the slope or plane along its length. His work was with the hoisting engineer at the top. His duties were related to and had to do with the cars when they had reached the top of the plane. He was not required in the performance of his duties to go on this forbidden plane.

"The case at bar is controlled by the doctrine announced in *Palla v. Glen Alden Coal Co.*, 105 Pa. Superior Ct. 96, 98, to the effect that where an employee violates a positive rule as to entering forbidden parts of the owner's premises about which he has no duty to perform, and an injury results, he not only violates the orders of his employer, but is in the position of a trespasser, who without right, authority or permission enters forbidden ground. See also *Dickey v. Pittsburgh & Lake Erie R. R. Co.*, supra, [297 Pa. 172]; *James v. Susquehanna Collieries Co.*, 113 Pa. Superior Ct. 326, 330, 331.

"We have ignored the conclusions of law improperly found by the Board on January 15, 1934, in reaching our conclusion. Had we considered them, we would have held them without support in law upon all the evidence in the case.

"We might add that although the Referee found and the Board affirmed that decedent violated no part of the

Anthracite Mine Law, such finding is without any support and in direct conflict with the uncontradicted evidence in the case. He clearly violated Rules 16, 41 and 51 of the Act of June 2, 1891, P. L. 176, known as the Anthracite Mine Law."

The court accordingly dismissed the pending appeal of the claimants and affirmed the order of the board of August 31, 1933 which approved the referee's findings, conclusions and order of disallowance of March 29, 1933.

A careful review of the entire record convinces us of the correctness of the legal conclusions drawn by the court below from the facts found by the referee and approved by the board, which were supported by the evidence; and that those set aside by the court, following the procedural error of the board were not supported by the evidence in the record. To the authorities cited by the court may be added, *Rolling v. Jeddo-Highland Coal Co.*, 136 Pa. Superior Ct. 153, 7 A. 2d 135.

We are satisfied, too, from the evidence in the record, that Rule 16 of Art. XII of the Anthracite Mine Law of June 2, 1891, P. L. 176, p. 197, to wit, "No person shall ride upon or against any loaded car, cage or gunboat in any shaft, slope or plane in or about a mine or colliery", applied to the present case, and that the deceased employee in riding upon an empty car which was being pulled up the plane by a descending loaded car, was riding "against a loaded car", and, consequently, violating the Anthracite Mine Law.

Judgment affirmed.