## Hopwood *v.* Pittsburgh, Appellant.

Argued April 15, 1943. Before KELLER, P. J., BALD-RIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*John A. Robb*, Special Assistant City Solicitor, with him *Anne X. Alpern*, City Solicitor, for appellant.

*James J. Lawler*, of *Prichard, Lawler, Malone & Geltz*, for appellee.

OPINION BY HIRT, J., July 16, 1943:

Claimant's husband, an orderly at Leech Farm, a tuberculosis hospital owned and operated by the City of Pittsburgh, died from accidental injuries. Compensation was awarded claimant for his death and the lower court entered judgment on the award. Death from accident is admitted but the city in this appeal seeks to avoid liability contending that decedent had been drinking while on duty, contrary to his instructions and a rule of the hospital; that he was intoxicated at the time of the accident in violation of the law; that he had abandoned his employment and was not injured in the course of it; and, in general, that the award is not sustained by the evidence.

Three orderlies worked in the hospital in successive eight-hour shifts. Decedent worked from midnight until 8 A. M. On May 2, 1941, he reported shortly before midnight and assumed his duties of caring for the patients in the hospital. Somewhat less than three hours later, the night superintendent of nurses talked with him for about ten minutes on the hospital floor where he was stationed. She smelled liquor and observed that his face was flushed; that he had "all the appearances of a person who had been drinking." She however did not give it as her opinion that he was intoxicated. She said that he walked "pretty straight, straight enough that I thought possibly he'd be able to continue his duties." About 5 o'clock that morning it was noted that he had left the floor. It is a reasonable inference from the testimony that he continued to perform his duties until about that time. There is no evidence to the contrary.

The second floor of a wing of the hospital building was set aside as a dormitory for use by the orderlies and other employees, and one of the bedrooms was assigned to decedent. The hospital proper was on the second floor of the main building and to go from the hospital to the dormitory it was necessary to descend to the first floor. Thence there was a choice of stairways to the dormitory floor, one of them enclosed in a fire tower. Decedent was observed shortly before 6 o'clock that morning in the hallway of the dormitory leaning against the wall. He was next seen about nine o'clock lying unconscious on the floor of a bedroom, not his own, but of another orderly. An examination disclosed a severe injury to his head as well as a number of less serious injuries to his body. He did not regain consciousness and died the following evening from a fractured skull.

The evidence as a whole does not convict decedent of intoxication. When last seen on the hospital floor he could function and was performing the duties of an orderly. Dr. Martin, the superintendent of the hospital noted "a heavy odor" of alcohol on his breath when he found him unconscious some hours later. And the doctor who performed an autopsy on the body of decedent at 9 o'clock in the evening following the accident, about two hours after death, though he believed he was intoxicated at the time of the injuries, came to that conclusion only from the fact that there was an odor of alcohol in the tissues of the body. He could not estimate the amount of alcohol that had been consumed. He testified: "Now, how much alcohol he had that would permit of that odor to remain over the intervening period ...... I don't know, and to give you an accurate estimate of the amount, I can't because no chemical test was made of the blood or the urine to determine the concentration of alcohol ...... If he has taken intoxicating liquor, that doesn't mean that

he's intoxicated because I don't know how much he's had to drink and I don't know what his physical state is." The means of making the tests were at hand and the fact that no tests were made has some significance. The weight of his opinion was for the board. It was weakened by his testimony of swelling, congestion and edema of all organs, particularly of the lungs, limiting normal breathing, thus retarding oxidation of the alcohol by ventilation of the tissues. The board referred to the testimony and from its conclusion a finding is necessarily implied that proofs were insufficient to establish intoxication.

Decedent violated definite instructions and a rule of the hospital by drinking while on duty. But this fact does not necessarily bar claimant, for compensation may not be denied for all violations of positive orders. A violation of a rule or order, though wilful, ordinarily does not operate as a bar unless the injury *results* from acts which are in direct hostility to and in defiance of positive orders of the employer. *Dickey v. Pittsburgh & L. E. R. R. Co.*, 297 Pa. 172, 146 A. 543; *Palla v. Glen Alden Coal Co.*, 105 Pa. Superior Ct. 96, 160 A. 157; *Garrahan v. Glen Alden Coal Co.*, 149 Pa. Superior Ct. 1, 26 A. 2d 138. Wilful misconduct in itself does not work a forfeiture of the right to compensation. *Blouss v. Delaware L. & W. R. R. Co.*, 73 Pa. Superior Ct. 95. Decedent's drinking while on duty was a wilful violation of a rule of the hospital governing the conduct of orderlies while on duty. But the evidence does not establish intoxication in any degree as the cause of the first, nor of the second injury which resulted in his death, and the board's findings in effect are to the contrary.

Appellant's contention that claimant is barred by decedent's violation of the Act of March 31, 1856, P. L. 200, 47 PS 722, also, is wholly without merit. That act imposes a fine on conviction of one "found intoxi-

cated in any street, highway, public house or public place ......" Decedent was not convicted of intoxication in violation of the statute; a municipal hospital is not a "public house or public place" in contemplation of the act; the statute imposes a penalty only in a summary proceeding; violation of law barring recovery under §301 of the Compensation Act, 77 PS 411, in general, means a felony or a misdemeanor. *Curran v. Vang Const. Co.*, 286 Pa. 245, 133 A. 261; *Rich Hill Coal Company v. Bashore*, 334 Pa. 449, 7 A. 2d 302.

Decedent did not abandon his employment and the referee, upon sufficient evidence found that he suffered accidental injuries in the course of his employment; the board affirmed this finding. Violation of the rule against drinking in itself did not amount to abandonment of employment, for the good reason, if for no other, that when decedent's condition was observed, he was allowed to continue his service as an orderly in spite of it. There was no abandonment by leaving the premises. There is evidence that decedent was first injured before 8 A. M. during his working day. There were no witnesses to the accident and no one knows how it occurred. This injury occurred on the first floor of the hospital near the fire tower. A series of blood stains indicate that he went upstairs to the dormitory and into the bathroom. The circumstances support the theory advanced by Dr. Martin that, dazed by his injury decedent then went into the bedroom of another orderly, instead of his own across the hall; that he then lay on the bed for a time and, still dazed, on arising, fell backward striking his head against a radiator. The word "premises" in the Act does not include all property of the employer "but does embrace that used in connection with the actual place of work where the employer carries on the business in which the employee is engaged": *Meucci v. Gallatin Coal Co.*, 279 Pa. 184, 123 A. 766; *Black v. Herman*, 297 Pa. 230, 146 A. 550;

*Reese v. Penna. R. R. Co.*, 118 Pa. Superior Ct. 112, 180 A. 188. Cf. *Feeney v. N. Snellenburg & Co.*, 103 Pa. Superior Ct. 284, 157 A. 379; *Tolan v. Phila. & Reading C. & I. Co.*, 270 Pa. 12, 113 A. 67. The dormitory for employees was a part of the employer's premises. It was maintained for purposes closely related to the actual conduct of the hospital. Decedent was dressed in the uniform of an orderly when found. The rooms were more than places for change of clothing; beds in the dormitory rooms undoubtedly were provided for periods of rest in intervals between actual service. And decedent, if in the dormitory for any legitimate purpose related to his employment or as a place of retreat because of an injury which occurred in the course of it, was still on the premises of his employer. Our compensation act does not require that the accident resulting in injury must arise out of the employment but only that it occur "in the course of the employment." *Hale v. Savage Fire Brick Co.*, 75 Pa. Superior Ct. 454. Accordingly, "Acts of ministration by a servant to himself, ...... performance of which while at work are reasonably necessary to his health and comfort, are incidents to his employment and acts of service therein within the workmen's compensation acts, though they are only indirectly conducive to the purpose of the employment. Consequently no break in the employment is caused by the mere fact that the workman is ministering to his personal comforts or necessities ......": *Dzikowska v. Superior Steel Co.*, 259 Pa. 578, 103 A. 351. The fact that decedent was required to remain on the hospital floor during working hours is not controlling. *Tappato v. Teplick & Eisenberg Co.*, 133 Pa. Superior Ct. 231, 2 A. 2d 545. It is not necessary to entitle a claimant to compensation that the injury be sustained while the employee was actually engaged in the work he was hired to do. *Hale v. Savage Fire Brick Co.*, supra.

The presumptions are in favor of claimant. In compensation cases, where, as here, there were no eye witnesses to the accident "the prevailing rule is that, if an employee was last seen at his work, he is presumed to have continued at his employment, in the absence of evidence to the contrary" even though circumstances attending the fatal accident are unexplained. *Tappato v. Teplick & Eisenberg Co.*, supra; *Flucker v. Carnegie Steel Co.*, 263 Pa. 113, 106 A. 192. An accident sustained in the course of employment even from an unexplained cause is compensable. *Zelazny v. Seneca Coal Mining Co.*, 275 Pa. 397, 119 A. 487. The inferences to be drawn from the evidence were for the board. *Ford v. Dick Co.*, 288 Pa. 140, 135 A. 903.

The testimony as a whole supports the award. The circumstances indicate a connection between the first and the second accidents in proximate sequence. Both accidents occurred on the premises of defendant and in the course of employment. The defendant in suggesting drinking while on duty, in violation of positive orders, as the cause of the accident, had the burden of proving it. Cf. *Molek v. W. J. Rainey, Inc.*, 120 Pa. Superior Ct. 95, 181 A. 841; *Robertson v. Rieder & Sons*, 114 Pa. Superior Ct. 518, 174 A. 604. This burden was not met.

Judgment affirmed.