Moore *v.* Hunt Mining Company et al., Appellants.

Argued March 1, 1948. Before RHODES, P. J., HIRT, ROSS, ARNOLD and FINE, JJ. (RENO and DITHRICH, JJ., absent.)

*Nathan Hyman,* with him *Paul. R. Orrson, Frank L. Pinola* and *Ernest D. Preate,* for appellants.

*L. D. Savige,* for appellee.

OPINION BY FINE, J., July 23, 1948:

Frank Moore died June 25, 1945, as a result of injuries sustained in the employ of the Hunt Mining Company, appellant. Bessie M. Moore, his widow, filed a claim petition to which appellant filed an answer asserting that Moore, at the time he sustained the fatal injuries, was violating Rule 16 of the Anthracite Mining Law [1] as well as specific instructions of appellant not to ride the mine cars, which conduct barred recovery of compensation. The board affirmed the referee's findings of fact, conclusions of law and allowed compensation. The court below affirmed the action of the board and entered judgment on the award from which Hunt Mining Company and its insurance carrier appealed.

---

[1] Rule 16 of the Anthracite Mining Law (Act of 1891, P. L. 176, 52 PS §287) provides: "No person shall ride upon or against any loaded car, cage or gunboat in any shaft, slope or plane in or about a mine or colliery."

Frank Moore, on the morning of June 22, 1945, at about 8:15 a.m., was engaged in the performance of his duties of supplying miners with empty cars and removing loaded cars from employer's mine to the outside. Leroy Walters, the only fellow-employe to witness the accident, was approximately forty to fifty feet away from Moore at the time of the occurrence. He described the accident as follows: deceased was standing between two sets of cars on parallel tracks, one set was loaded with coal and the other was empty; Moore put his right foot on the bumper of the first car of the loaded trip and his left foot on the rope; that he was adjusting the clevice to untwist the rope when the rope suddenly jerked, whereupon Moore lost his balance, fell over on the opposite side of the cars and was dragged approximately ten feet. Walters immediately stopped the trip of cars and called the foreman who had Moore removed to the Mid-Valley Hospital. The referee found as a fact that "decedent at the time of the accident, which resulted in his death, was not riding the car or the rope, but was straightening out the rope, and that the decedent was not killed as a result of violation of the mining laws or of positive orders." The board in affirming this finding stated: "The weight of the credible evidence negatives any violation of law or violation of positive orders by the decedent."

At the time of the accident Moore was either assembling a trip of loaded cars or supervising the movement of a trip already assembled, across No. 3 heading or level to the foot or bottom of No. 2 slope or plane, where in accordance with the usual practice it would be stopped preparatory to its ascent 1200 to 1400 feet up the said slope. The employe would then ascend the slope afoot and inform the engineer on No. 2 heading to hoist the trip as "everything is in the clear." The testimony of Walters is abundantly clear on the transportation practices: "Q. So if a man were carrying on the job of transportation man in the ordinary and regular manner

of doing that he would couple the cars and attach the rope and walk up for three minutes and eight seconds? A. Yes, sir. . . . Q. He didn't walk up three minutes and eight seconds at the time of the accident, did he? A. He didn't have a chance to. It was our practice in the mines to pull these cars up past the No. 3 engine in the mines where we had a head-block there and put the head-block over on the rail while the trip was standing there, go past the trip and walk up to the second engine and tell him the engine was okay to pull on up and from there on. Q. Mr. Walters it wasn't done at the time of the accident because obviously from your testimony he gave the bell at the bottom of the trip, didn't he? A. We always did that. Q. What did you do, walk ahead or walk behind? A. Stay right there until the cars are moved approximately fifty feet, stop the trip and put a head-block on so the cars can't come back, and walk past the cars and walk clear out, three minutes and eight seconds and tell the engineer to go ahead and pull it, everything is in the clear."

Appellants contend that violation of Rule 16 of the Anthracite Mining Law, supra, and deceased's conduct in direct hostility to specific instructions and in defiance of positive orders of the employer not to ride loaded mine cars, so clearly appear that this Court should declare as a matter of law that deceased had thereby removed himself from the course of his employment: *Kirker v. W. M. McIntosh Co.,* 156 Pa. Superior Ct. 199, 39 A. 2d 846. The *Kirker* case is easily distinguishable upon the facts and is not controlling. Cf. *Soroka v. Philadelphia & Reading Coal & Iron Co.,* 138 Pa. Superior Ct. 296, 10 A. 2d 904; *Palla v. Glen Alden Coal Co.,* 105 Pa. Superior Ct. 96, 160 A. 157. To accept appellants' contention that the deceased was on the car presumably for his own convenience and to avoid walking the incline, we must reject all consideration of the usual practices of the employment, must discard as meaningless the reputation of the deceased as a careful

workman and must assume not only that the deceased acted contrary to his usual conduct but that he violated the law and positive orders of his employer in which he was apparently joined to an extent by No. 2 engineman. The latter hoisted cars on the plane only after told to do so by the transportation man after he had ascended the slope; he did not start the ascent of cars on bell signal, as appellants here theorize. It seems illogical to assume Moore boarded the moving car to ride a short distance across No. 3 heading; rather, it is to be concluded, as testified by Walters, that he was on the front bumper, not for his own convenience, but pursuant to the usual practice and in the performance of his duties, for the purpose of straightening the twisted rope by adjusting the clevice with which it was attached to the front car of the trip. "Q. Is it the duty of the transportation man having hooked this rope on to the clevice of the loaded car to give the bells, two or four, whatever is required, and then watch that the hook doesn't fly out or the rope get snagged along the road? A. Yes, sir. Q. He should be near the head of the trip where he can keep that hook engaged in the clevice? A. Yes, sir. Q. And so far as you could see was Mr. Moore doing the right thing, the proper practice, in watching that the hook was in the clevice of the loaded car? A. Yes, sir, Mr. Moore was very careful. By the Referee: Q. You said that he put his right foot on the bumper of the first car and his left foot on the rope. Was that the proper thing to do? A. Well Mr. Referee as I see it, there may have been something wrong with the rope, the clevice gets twisted, and if you kick or push it, it will straighten itself out. I have done it myself several times, push that clevice around so it is straight, pull straight." When Walters was asked by the referee how he, as a transportation man, adjusted the twisted rope he replied: "While the cars were in motion, the same as Mr. Moore did."

There is competent and substantial evidence to sustain the factual findings that Moore, at the time of the

accident, was not violating the Anthracite Mining Law or positive orders of his employer. The testimony of Walters amply sustains the findings of the compensation authorities which will not be disturbed on appeal. *Dunkle v. Baltimore & Ohio Railroad Co.*, 162 Pa. Superior Ct. 340, 57 A. 2d 714. Moreover, there was testimony that straightening the twisted rope or cable in such a manner is not unusual. There was no evidence of prior violations by Moore of either the law or any positive orders, nor that by so acting he was motivated by a desire to serve his own convenience. Deceased was doing what he was required to do—to make certain the cable was properly fastened so that the cars might be drawn up the slope.[2] "Neither the lower court nor an appellate court can say that the board must find one way or another. Although it may feel that the weight of the evidence, as a whole, is against the finding of fact so made, it may not disturb that finding if it is supported by sufficient legally competent evidence: *Hanlon v. Gulf Refining Co. et al.*, 115 Pa. Superior Ct. 315, 317, 175 A. 724, 725. There can be no interference by the courts with such findings, whether they be based on proved facts or inferences therefrom. *Flucker v. Carnegie Steel Co.*, 263 Pa. 113, 119, 106 A. 192, 194": *Paulin v. Williams & Co.*, 122 Pa. Superior Ct. 462, 466, 186 A. 415, affirmed in 327 Pa. 579, 583, 195 A. 40. The record does not so clearly establish that deceased was violating the law or a positive order of his employer to deny claimant compensation. As the board's findings are sustained by the evidence it was solely within their power to determine which of contrary inferences, fairly deducible from the basic facts found, they should adopt. Our revisory powers are limited to the ascertainment whether the findings are supported by evidence and if, upon such findings, the law has been properly applied. We may not alter the board's conclusions solely because

[2] Cf. *Barkanich v. Jeddo-Highland Coal Co.*, 105 Pa. Superior Ct. 145, 160 A. 137.

we might well have concluded otherwise. *Price v. Glen Alden Coal Co.,* 100 Pa. Superior Ct. 260; *Labuck v. Mill Creek Coal Co.,* 292 Pa. 284, 287, 141 A. 35; *Stahl v. Watson Coal Co.,* 268 Pa. 452, 454, 112 A. 14. Cf. *Kolonik v. Hudson Coal Co.,* 160 Pa. Superior Ct. 491, 493, 52 A. 2d 384.

Section 301 of the Workmen's Compensation Act, as amended June 21, 1939, P. L. 520, 77 PS §431, provides "that no compensation shall be paid when the injury or death . . . is caused by the employe's violation of law, but the burden of proof of such fact shall be upon the employer." Likewise, where the employer suggests a violation of positive orders as the cause of the accident, the suggestion is of no effect unless the employer meets the burden of proving it. *Hopwood v. Pittsburgh,* 152 Pa. Superior Ct. 398, 33 A. 2d 658; *Kolonik v. Hudson Coal Co.,* 160 Pa. Superior Ct. 491, 52 A. 2d 384. The appellants have not met their burden with requisite proof of a violation of law or of a breach of positive orders or specific instructions of the employer.

It is unnecessary to pass upon the correctness of the admission, as res gestæ, of the statements made by deceased to appellee at the Mid-Valley Hospital approximately two hours after the accident. The challenged testimony [3] we deem immaterial, for, ignoring it completely, the remaining evidence is sufficient to sustain the finding that the fatal injuries were the result of an accident sustained while in the course of employment.

Judgment affirmed.

---

[3] The testimony admitted over objection reads as follows: "Q. Will you tell just what was the first thing your husband said to you about this accident? A. Well I went in and he had his eyes closed and I walked up to him and said 'Dad what happened' and he looked up and said 'I guess they got me this time'. I said 'what happened to you' and he said 'there was a trip of cars off and I went up and got them on and gave the fellow the bell and it wouldn't start up, and then when they did start the cars the trip struck [me]."