Walker *v.* Nu-Car Carriers, Inc., et al., Appellants.

Argued October 1, 1948.  Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Raymond J. Porreca,* with him *Raymond A. White, Jr.,* for appellants.

*Joseph A. Palmer,* for appellee.

OPINION BY FINE, J., January 14, 1949:

Nu-Car Carriers, Inc., employer, and its insurance carrier appeal from the entry of a workmen's compensation award in favor of Pauline B. Walker, widow, and her four minor children and challenge the finding of the compensation authorities that James Kenneth Walker, deceased, was killed while in the course of his employment.  The defendants assert that Walker lost his status as an employe by (1) disobeying written and oral rules of his employer and (2) violating certain rules and regulations of the United States Government pertaining to the operation of army motor vehicles.

The employer-appellant was engaged in the business of delivering motor vehicles for the army from one location to another and maintained its business office in Chambersburg, Pennsylvania.  Walker was employed as a truck driver and his duties consisted of delivering army trucks to points of destination designated by the army.  Drivers thus employed were required to pass specified driving tests given by the United States Army,

whereupon they received operating permits issued by the Quartermaster Corps. On March 29, 1945, deceased was directed by his employer to proceed from Chambersburg to Richmond, Virginia, where he was to secure two army trucks and drive them to Newport News, Virginia. Appellant gave deceased the railroad fares from Chambersburg to Richmond, from Newport News to Richmond where he was to secure the second truck for delivery to Newport News, and for his return from Newport News to Chambersburg. Deceased was also entrusted with bills of lading,[1] or delivery receipts, and, upon delivery of the army vehicles in good condition, deceased was instructed to immediately return the bills of lading or delivery receipts, properly signed, to appellant in Chambersburg. The compensation of deceased was computed from these documents which also were the basis upon which the employer secured payment from the United States Government. Deceased, upon arriving in Richmond, was instructed by appellant to deliver only one army truck to Newport News, return to Richmond to pick up the second truck, deliver this army vehicle to Carteret, New Jersey, and then return from Carteret instead of from Newport News to Chambersburg.

On April 1, 1945, after making his delivery to Carteret, deceased proceeded by direct route to Chambersburg on his motorcycle which he had transported in the army vehicle. While passing through Haverford, Pennsylvania, he collided with an automobile on Lancaster Pike and died shortly thereafter as a result of the injuries sustained. Following the accident, local police found certain papers of the appellant in deceased's possession including two bills of lading and/or two delivery receipts, and a paper captioned "Report of Violation by Highway Patrol, Third Service Com-

---

[1] Employer vigorously denied that operators of trucks carried bills of lading or returned them to the employer as the basis for compensation due it from the United States Government.

mand." This report showed that on March 30, 1945, deceased, while driving from Richmond to Newport News, had exceeded the army speed limit of thirty-five miles per hour and had been reported to the army by military police. No hearing was held on this violation.

The board, in affirming the award of the referee, found: "The decedent had no regular hours of employment and his duties did not cease when he had made a delivery of a motor vehicle. He was subject to call at any time when commissioned to go to another city for his employer. On completing the delivery at Carteret, New Jersey he still had to report the fact of the delivery and return the receipted documents to his employer. He was so engaged in delivering the documents required by his employer when injured. This activity at the time of the injury was not foreign to any concept of his employment. He was still on the errand to which he was assigned by his employer." The board also found that, "The return of the documents was connected with the employer's business because these documents were the basis on which the employer was paid by the United States Government," and concluded that Walker was furthering the interests of his employer in returning the papers to the home office in Chambersburg, and consequently he was acting in the course of his employment at the time of the fatal accident. It might be persuasively argued that, in the absence of any requirement to return documents to the home office, the employe's errand was uncompleted until his return to the home office, where his assignments were made, and that, therefore, he was actually engaged in the furtherance of his employer's business during the entire return trip. Cf. *Haddock v. Edgewater Steel Co.,* 263 Pa. 120, 106 A. 196; *Keely v. Metro. Edison Co.,* 157 Pa. Superior Ct. 63, 41 A. 2d 420; *Young v. State Workmen's Insurance Fund,* 137 Pa. Superior Ct. 405, 9 A. 2d 198; *Baumann v. Howard J. Ehmke Co.,* 126 Pa. Superior Ct.

108, 190 A. 343. Moreover, as we view the record the appellants do not challenge claimant's position that truck drivers were acting in the course of their employment while returning to Chambersburg, but they strenuously urge that "the decedent took himself out of the course of his employment in returning to Chambersburg, Pennsylvania, after delivering the army truck to Carteret, New Jersey, because of his disregard of rules and regulations in returning."

The principal question raised in this appeal is whether Walker, by returning to Chambersburg by motorcycle, instead of by "bus, train or other means of public transportation," disobeyed his employer's positive orders or rules and regulations regarding the mode of travel on the return trip and thereby removed himself from the course of his employment. The question has been considerably narrowed by the failure of the compensation authorities to find there was a violation of rules and regulations or a disobedience of positive orders by Walker's use of his motorcycle. We are therefore not confronted with the problem of determining whether, because of a violation of a positive order or rules and regulations of work, compensation should be disallowed (*Garrahan v. Glen Alden Coal Company*, 149 Pa. Superior Ct. 1, 26 A. 2d 138; *Demuzzio v. Lattimer Coal Corp.*, 157 Pa. Superior Ct. 459, 43 A. 2d 597; *Dickey v. Pittsburgh & L. E. R. R. Co.*, 297 Pa. 172, 146 A. 543) ; or despite such violation, whether the decedent remained within the course of his employment and entitled to compensation (*Waslin v. Conlon Coal Co.*, 163 Pa. Superior Ct. 368, 62 A. 2d 120; *Moore v. Hunt Mining Co.*, 163 Pa. Superior Ct. 94, 60 A. 2d 560; *Kolonik v. Hudson Coal Co.*, 160 Pa. Superior Ct. 491, 52 A. 2d 384). A violation of positive orders or rules and regulations is an affirmative defense and the burden of establishing such violation is upon the employer. *Moore v. Hunt Mining Co.*, 163 Pa. Superior Ct. 94, 60 A. 2d 560.

Apparently both referee and the board disbelieved the evidence of the appellants for as stated in *Kostello v. Kostello,* 159 Pa. Superior Ct. 194, 196, 48 A. 2d 25: "Where the triers of the facts refuse to find facts in favor of the party having the burden of proof, the question on review is not whether competent evidence would sustain such a finding if made, but whether there was a capricious disregard of competent evidence in the refusal so to find: Kline v. Kiehl, 157 Pa. Superior Ct. 392, 43 A. 2d 616. . . . The triers made no findings establishing the facts of this defense of 'violation of positive orders.' In other words, the testimony of the [appellants] was not believed."

Unlike the *Kostello* case wherein defendant's evidence of the violation of a positive order was uncontradicted, we have here a conflict in the evidence on the main question as to whether Walker removed himself from the course of his employment at the time the accident occurred. Four truck drivers testified that appellant never gave any instructions restricting the method by which a truck driver should travel when returning to Chambersburg, after delivery of the last truck to its destination. These witnesses testified: "We were told we could come back by train, bus, hitch-hike or any way we wanted to come back," ". . . any way we could get back," ". . . any way we wanted to just so we came back to the office in Chambersburg; we hitch hiked back if we wanted to." The employer called two witnesses whose testimony was to the effect that not only did the contract of employment restrict the method of return travel to bus, train or other means of public transportation, but that positive orders [2] were given Walker not to use his motorcycle. The compensation authorities, as

---

[2] "Equivocal instructions are not the equivalent of positive orders": *Young v. State Workmen's Insurance Fund,* 137 Pa. Superior Ct. 405, 409, 9 A. 2d 198. Instructions must be explicit, direct and positive.

was. their exclusive right, accepted the testimony of the truck drivers and rejected the testimony of the two witnesses for the employer. *Martz v. Butler County Mushroom Farm,* 149 Pa, Superior Ct. 276, 279, 27 A. 2d 765. Nor did the compensation authorities disregard, as appellants claim, the evidence relative to the violation of positive orders or rules and regulations of his employer.

The board, in affirming the referee, succinctly summarized the testimony on that question as follows: "The question of fact then arises whether any instructions prohibiting the use of the motorcycle were given to the decedent. If we believe that the decedent was not permitted to use the motorcycle and was restricted as to his mode of travel, then the question of the alleged violation of instructions would arise. The claimant's evidence indicates that the drivers, including the decedent, were permitted to use any means they desired in returning to Chambersburg, as long as they returned the documents with great dispatch. The defendant's witnesses testified that the decedent was instructed not to use the motorcycle and that he was ordered to return by bus or train. This issue of fact was decided by the Referee adversely to the defendant and we see no error in this decision since it was based on competent and credible evidence."

The board apparently intended to make a specific finding on the question of violation of orders, rules and regulations or they would not have stated, "This issue of fact was decided by the Referee adversely to the defendant and we see no error in this decision." The referee made no specific finding on that matter. However, the inference is inescapable that the board considered the evidence bearing on such violation and intended to adopt a specific finding of nonviolation of orders, rules and regulations which it mistakenly credited to the referee. How can it then be successfully advanced that the board capriciously disregarded the evidence on

that matter by its failure to make a specific finding thereon. This case may be properly disposed of without such specific finding and is not ruled by *Tomlinson v. Hazle Brook Coal Co.*, 116 Pa. Superior Ct. 128, 176 A. 853. Moreover, appellants took no exception to the failure of the board to make such specific finding and it will not be considered by this Court on appeal: *McDermott v. Sun Indemnity Co. of N. Y.*, 131 Pa. Superior Ct. 60, 70, 198 A. 499.

Appellants' contention that deceased's employment terminated on March 30, 1945, by virtue of his violation of the army speed regulations while enroute to Newport News is without merit. The compensation authorities and the court below all properly concluded that such violation did not sever the employer-employe relationship. Every violation of positive orders or rules and regulations governing employment does not *ipso facto* deprive the employe of the right to compensation. An employe cannot be denied compensation unless the violation is the proximate cause of his injury Cf. Act of 1915, P. L. 736, Art. III, §301, as last amended by the Act of 1939, P. L. 520, §1, 77 PS 431. *Moore v. Hunt Mining Co.*, 163 Pa. Superior Ct. 94, 60 A. 2d 560; *Kolonik v. Hudson Coal Co.*, 160 Pa. Superior Ct. 491, 52 A. 2d 384. The speeding violation in Virginia obviously was not the proximate cause of his death in Haverford, Pennsylvania; it had not the remotest causal connection with the injury and death of deceased; *Moore v. Hunt Mining Co.*, supra, 163 Pa. Superior Ct. 94, 60 A. 2d 560; *Bucci v. Lincoln Coal Co.*, 140 Pa. Superior Ct. 538, 14 A. 2d 359; *Serafini v. West End Coal Co.*, 131 Pa. Superior Ct. 476, 200 A. 245; *Haywood v. Henrietta Coal Co.*, 118 Pa. Superior Ct. 371, 180 A. 34.

The competent and relevant evidence amply supports the findings of the referee and the board that the deceased was furthering the interests of his employer

and that he was in the course of his employment at the time of the fatal accident. These findings will not be disturbed. The appellants failed to show a capricious disregard by the compensation authorities of the credible evidence relative to their affirmative defense of "violation of orders, rules and regulations."

Judgment affirmed.