**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Steven ROCKY MOUNTAIN, Defendant and Appellant.**

**No. 16622.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 16, 1989.

Decided Dec. 13, 1989.

Roger A. Tellinghuisen, Atty. Gen., Frank Geaghan, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

David R. Wurm, Office of the Public Defender for Pennington County, Rapid City, for defendant and appellant.

HENDERSON, Justice.

## PROCEDURAL HISTORY/ISSUES

Steven Rocky Mountain (Rocky Mountain) was found guilty of disorderly conduct under SDCL 22–13–1(1),* a class 2 misdemeanor, and indecent exposure, under SDCL 22–24–1, after a nonjury trial before Magistrate Judge Michael J. O'Connor. Rocky Mountain was sentenced to six days in the Pennington County Jail for each of these two counts, sentences to be served concurrently, with credit for time served. Suspended jail sentences of 364 days imposed on Rocky Mountain for two other incidents were revoked by the trial court.

Rocky Mountain appealed both convictions to the circuit court for Pennington

County, whereupon the circuit court reversed the judgment regarding indecent exposure, but affirmed the judgment regarding disorderly conduct. On appeal to the Supreme Court, Rocky Mountain raises two allegations of error concerning his disorderly conduct conviction:

1. His actions took place in a non-public place (reception area of a city/county detoxification center); and,

2. Evidence was insufficient to support finding him guilty of disorderly conduct.

## FACTS

In the evening of January 12, 1989, Rocky Mountain was admitted to the Rapid City/Pennington County receiving and referral center, known as, "detox". The technician on duty at the time was Joy Heutzenroeder (Heutzenroeder). Soon after admission, Rocky Mountain became belligerent, which is, itself, per Heutzenroeder's testimony, not unusual at the center.

Events soon escalated. Rocky Mountain, who is missing one leg below the knee, came crawling out of the bed/residential area, and, near the desk, apparently, asked for his crutches. Heutzenroeder told him "just a minute, Steve[,] I will be right with you." He became very angry, yelling out vile, abusive names to her. Heutzenroeder gave him his crutches. Rocky Mountain then gave her "a look and went like that [swinging them back, as established on cross-examination], like he was going to hit me with them." She took his crutches away, after a struggle, during which she called on a male attendant for help. The male attendant came in, but, apparently, she did not need physical assistance by then.

Heutzenroeder pushed a wheelchair over to Rocky Mountain after he threatened to "pee on the floor." It appears this was the first indication he gave to anyone that such was the nature of his quest. Rocky Mountain did not sit in the chair. Rather, he stood on his one leg and lowered his pants,

---

* SDCL 22–13–1 provides, in pertinent part: "Any person who intentionally causes serious public inconvenience, annoyance, or alarm to any oth- er person, or creates a risk thereof by: (1) Engaging in fighting or in violent or threatening behavior [ ] is guilty of disorderly conduct."

allegedly exposing his genitalia to Heutzenroeder. Heutzenroeder called the police, and Rocky Mountain sat down. Rocky Mountain called Heutzenroeder's male partner names (unspecified), and spat at him until the police arrived.

## DECISION

Rocky Mountain first argues that his actions did not occur in a public place, therefore, he cannot be guilty of disorderly conduct. *State v. Pickering*, 317 N.W.2d 926, 927 (S.D.1982), provides: "Even though disorderly conduct may be directed at one person, it is clear from the statute that an essential element of disorderly conduct is the public nature of the offense, *see, Ellis v. Archer*, 38 S.D. 285, 161 N.W. 192 (1917) (wherein we distinguish public from private place)." *Ellis*, in turn, defined "public place" as "a place which in point of fact is public as distinguished from private—a place that is visited by many persons and is accessible to the neighboring public", 38 S.D., at 288, 161 N.W. 192 (open doorway to barn is a public place). This precedent is of little value to our specific inquiry. Rocky Mountain argues that his situation is equivalent to the living areas of a hospital, under *Hopwood v. City of Pittsburgh*, 152 Pa.Super. 398, 33 A.2d 658 (1943). This is obviously inapplicable, as the events before us occurred in the common "desk" area of the "detox" center. More apt, we believe, is the State's reliance on *People v. Ennis*, 45 N.Y.S.2d 446 (1943), wherein a hall in a hospital was deemed a public place. Similarly, for the purposes of disorderly conduct, the ward of a mental hospital was considered a proper setting in *State v. Elson*, 60 Wis.2d 54, 208 N.W.2d 363 (1973).

 Here, Rocky Mountain physically raised his crutch as if to strike a technician. We hold that spitting and creating a struggle over crutches is clearly disorderly conduct. Filthy names attributed to the female technician by Rocky Mountain in angry tones buttress a sufficiency of the evidence holding. *State v. Bartlett*, 411 N.W.2d 411, 412 (S.D.1987). A rational theory of guilt is sustained. *State v. Battest*, 295 N.W.2d 739, 742 (S.D.1980).

These acts took place in a reception area of a city/county receiving and referral center where the public did come and go. As such, it was a public place and Rocky Mountain did cause "public inconvenience, annoyance, and alarm" to a person under SDCL 22–13–1.

Affirmed.

All the Justices concur.